[Civ. No. 20970. Fourth Dist., Div. Two. Jan. 11, 1980.]

EUGENE BUTTERFIELD, JR.,
Cross-complainant and Appellant, v.
NORTHWESTERN NATIONAL INSURANCE
COMPANY, Cross-defendant and Respondent.

COUNSEL

Burton Bach for Cross-complainant and Appellant.

Jones & Wilson and Karen Keating for Cross-defendant and Respondent.

OPINION

**McDANIEL, J.**—This appeal arose out of efforts by the State Board of Equalization to collect unpaid sales taxes due from Giant Investment and Land Company, a corporation. Such effort was by means of an action filed *May 13, 1977,* on a guaranty agreement executed in behalf of the corporation and in favor of the State of California, an agreement to which the appealing Eugene Butterfield, Jr., (defendant) was a subscribing guarantor. His signature had been acknowledged by Ruth B. Schoettlin, a notary public, prima facie on *July 22, 1970.*

By cross-complaint filed *July 12, 1978,* based upon his allegation that he had never appeared before Schoettlin, defendant sought indemnity from the notary public and her corporate surety, Northwestern National Insurance Company, for damages he might sustain by reason of the notary's alleged misconduct.

The surety demurred to the defendant's cross-complaint and the trial court sustained the demurrer without leave to amend on the ground that the action against the surety was barred by the six-year statute of limitations as contained in section 338, subdivision 6 of the Code of Civil Procedure. The defendant appealed from the judgment of dismissal entered in favor of the surety. In our view, the demurrer was rightly sustained, and so the judgment is affirmed.

The sole issue for decision is whether the statute of limitations noted was properly applied. It reads in pertinent part, "[w]ithin three years: ...6. An action against a notary public on his bond or in his official capacity except that any cause of action based on malfeasance or misfeasance is not deemed to have accrued until discovery, by the aggrieved party or his agent, of the facts constituting said cause of action; provided, that any action based on malfeasance or misfeasance shall be commenced within one year from discovery, by the aggrieved party or his agent, of the facts constituting said cause of action or within three years from the performance of the notarial act giving rise to said action, whichever is later; *and provided further, that any action against a notary public on his bond or in his official capacity must be commenced within six years.*" (Italics added.)

As noted, the alleged date of malfeasance was *July 22, 1970,* and the filing date of the cross-complaint was *July 12, 1978.* Defendant discovered the malfeasance when he was served with a copy of the state's complaint on or about *March 1, 1978.* Hence, while the filing of the cross-complaint was within one year of discovery of the alleged malfeasance, it was *more* than six years following the date thereof.[1]

■ Defendant takes the position that the "bond" referred to in the statute "cannot possibly" be the surety bond furnished by Northwestern National to Schoettlin in aid of her compliance with section 8213 of the Government Code.[2] In other words, it is defendant's position that the language of section 338, subdivision 6, by referring to an action against

---

[1]Both sides appear tacitly to agree that the six-year provision is determinative and takes precedence over the circumstance, as here, that filing was within one year of discovery.

[2]Section 8213 of the Government Code in pertinent part reads: "No later than 30 days after the beginning of the term prescribed in the commission, every person appointed a notary public shall file an official bond, and take, subscribe, and file an oath of office in the office of the county clerk of the county within which the person maintains a principal place of business as shown in the application submitted to the Secretary of State, and the commission shall not take effect unless this is done within the 30-day period. Upon filing the oath and bond, the county clerk shall forthwith

the notary "on *his* bond" contemplates a situation in which *his*, i.e., the notary's bond, is something different and apart from the surety bond the notary is required by statute to file before qualifying. The actual language from the brief which appears to state such a position recites, "[t]hus it can be readily seen that sureties are not among those parties entitled to the protection of the statute of limitations involved in this case. Code of Civil Procedure section 338, subdivision 6 speaks *only* of an action against notary public on *his* bond or in *his* official capacity. Therefore, it is plain from the statute wording that it is the *notary's bond* that receives protection of the statute, not the bond of the surety."

The authority cited for this proposition is *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197]. In that case the owner of an apartment project sought damages, arising from latent construction defects, from the architect, the contractor, and the surety on the contractor's performance bond. The trial court entered a summary judgment for the surety, purportedly pursuant to Code of Civil Procedure section 337.15, which imposes a 10-year limitation on any suit against an architect or general contractor for a latent defect in a development of, or improvement to, real property, running from the date of substantial completion thereof. The action had been brought more than ten years after the date of substantial completion of the apartment project, but only about two and one-half years after discovery of the latent defects.

The Supreme Court reversed. As here pertinent the court held that a construction surety is not among those parties protected by Code of Civil Procedure section 337.15, and that the running of the applicable statute of limitation on a principal obligation does not exonerate the surety thereof.

In our view, the cited case is not even remotely supportive of the proposition for which it is cited by defendant. The rationale of *Regents* is that section 337.15 of the Code of Civil Procedure did not extend to the contractor's surety because the latter was not mentioned in the statute; hence the surety's obligation was referable either to section 338, subdivisions 2 or 3 or to section 337, subdivision 1. That this is the rationale is demonstrated by the language, "[i]n brief, section 337.15

transmit to the Secretary of State a certificate setting forth the fact of such filing and containing a copy of the official oath, personally signed by the notary public in the form set forth in the commission and shall forthwith deliver the bond to the county recorder for recording."

merely describes actions against contractors and other parties as principal obligors, *without any reference to the duties or liabilities of a surety. Prior California decisions have clearly established that statutes of limitations so worded do not govern suits against a surety.*" (*Id.* at p. 632, italics added.)

In the case before us the pertinent statute *does* refer to a bond, and so we come back to the suggestion by defendant that there are *two* bonds here involved. Contrary to defendant's theory, there are not two bonds, i.e., not one issued by the notary and one by his surety. There is only one bond and that is the one issued by the surety, and it is under this bond, regardless of the abberant possessive pronoun, that the surety may be sued by a party injured as a consequence of defalcation by the notary.

There is no requirement that any person or entity other than the notary himself file a bond in connection with the performance of the notary's duties. If he is guilty of negligence or intentional wrongdoing, the notary will be held personally liable to the injured party. (*Kane* v. *Mendenhall* (1936), 5 Cal.2d 749 [56 P.2d 498].) By reason of the bond, his surety will also be answerable to the injured party. This liability is spelled out in Government Code section 8214, which provides in part: "For the official misconduct or neglect of a notary public, the notary public and the sureties on the notary public's official bond are liable in a civil action to the persons injured thereby for all the damages sustained."

An examination of the terminology used in this area of the law might dispel defendant's apparent confusion. A surety, according to Civil Code section 2787 is "one who promises to answer for the debt, default, or miscarriage of another." According to William J. Conners in his book, California Surety and Fidelity Bond Practice, the term "surety bond" means a "written instrument executed by the principal and surety in which the surety agrees to answer for the debt, default, or miscarriage of the principal." (Cal. Surety and Fidelity Bond Practice (Cont.Ed.Bar. 1969) p. xiv.) Conners defines the notary's "official bond" referred to in the portion of Government Code section 8214 quoted above, as "a bond required of a public official as a condition of holding office; the surety obligates itself to answer to the public body and, frequently, to members of the public injured by the failure of the public official to perform the duties of his office faithfully." (*Id.* at p. xiii.)

According to Conners, the official bond is distinguishable from the usual surety bond only in that it applies to the acts of a public official. These definitions make clear that the suretyship relationship is one in which the surety, in addition to the principal, becomes bound to third persons with respect to the "debt, default, or miscarriage of another." It is a tripartite relationship between the party secured, the principal obligor, and the party secondarily liable. (*Meyer* v. *Building & Realty Service Co.* (1935) 209 Ind. 125 [196 N.E. 250].) Because of the nature of the relationship, an individual *cannot* be his own surety. Consequently, in the case here there is only one bond, and that is the one which was issued by the surety and under which the surety is made answerable for the acts of its principal, the notary.

In view of the foregoing, it is our view that the plain intendment of section 338, subdivision 6 was that it apply as well to actions against the notary's surety. By its express terms there is a six-year maximum period within which an action must be brought against the surety regardless of when the misdeed is discovered, and so the trial court correctly sustained the demurrer.

### DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 6, 1980.