# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 4, 1999 Session

## CHARLES HARDY, ET AL. v. ROBERT BOND MILLER, ET AL.

### Appeal from the Chancery Court for Davidson County
No. 96-1409-II     Carol L. McCoy, Chancellor

---

### No. M1998-00940-COA-R3-CV - Filed December 10, 2001

---

This appeal involves a dispute among members of a joint venture regarding their rights under suretyship agreements each member signed to guarantee a loan to the joint venture. After the joint venture defaulted, the bank looked to the members of the joint venture for payment of the debt. After three members of the joint venture paid the bank more than their prorated share of the debt, they filed suit in the Chancery Court for Davidson County against a former member, seeking contribution for the amount they had paid in excess of their prorated share. The former member counterclaimed, seeking to recover the payments he had made to the bank on the joint venture's debt. Following a bench trial, the trial court concluded that the members were co-sureties, awarded the three members a $150,145.10 judgment against the former member, and denied the former member's counterclaim. The former member appealed, arguing that his former co-venturers lost their right to contribution when they expelled him from the joint venture and that he is entitled to be reimbursed for the payments he made to the bank on the joint venture's debt. We have determined that each member of the joint venture agreed to be severally liable to the bank for the joint venture's debt and, therefore, that the members were not entitled to contribution from the former member. We have also concluded that the trial court correctly dismissed the former member's counterclaim.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

H. Naill Falls, Jr., Nashville, Tennessee, for the appellant, Robert B. Miller.

Grant C. Glassford and Christine J. Laird, Nashville, Tennessee, for the appellees, Charles Hardy, Roy Flowers, and Marvin Hopper.

## OPINION

## I.

In July 1987 ten individuals, including Charles Hardy, Roy Flowers, Marvin Hopper, and Robert Miller, formed a joint venture known as Hardscuffle Associates to acquire and develop a

fourteen and one-half acre tract in Davidson County. To fund the development, the joint venture borrowed $1,400,000 from Commerce Union Bank. All ten members of the joint venture signed the loan agreement. At the bank's insistence, each member also signed a suretyship agreement guaranteeing to repay not more than $280,000 of the joint venture's debt.

Robert Miller and George Gianikas were initially the co-managers of the joint venture. However, in mid-1991, the joint venture expelled Mr. Miller because of his failure to make his required ongoing capital contributions. Mr. Gianikas, who then became the sole manager of Hardscuffle Associates, instructed the joint venture's accountant to redistribute Mr. Miller's interest to the remaining members of the joint venture.

In July 1991, Hardscuffle Associates executed a renewal and modification deed of trust note for $1,273, 715, which was to mature on September 15, 1992. On October 30, 1992, Hardscuffle Associates signed a "forbearance agreement" acknowledging that this note had not been paid, that Hardscuffle Associates was in default, and that Hardscuffle Associates was indebted for the full amount of the note plus interest. NationsBank, who had acquired Commerce Union Bank, proceeded against the individual members of the joint venture to collect the debt. Between late 1992 and early 1993, Messrs. Hardy, Flowers, and Hopper, paid NationsBank $280,000 under the personal guarantee they had signed in 1987. NationsBank also looked to Mr. Miller for payment, and he paid the bank $22,884.73 during 1994 and 1995.

In May 1996 Messrs. Hardy, Flowers, and Hopper filed suit against Mr. Miller in the Chancery Court for Davidson County. They alleged that Hardscuffle Associates' debt had been completely satisfied and that they had been required to pay more than their share of its outstanding debt. Accordingly, they sought contribution from Mr. Miller up to his prorated share of the debt. Mr. Miller responded that his former joint venturers has waived their right to seek contribution from him when they expelled him from the joint venture in 1991 without returning his capital contributions. He also sought to recover the $22,884.73 he had paid to NationsBank.

Following a bench trial in May 1998, the trial court filed a judgment on June 11, 1998. Based on the essentially undisputed facts, the trial court found the members of the joint venture were "co-sureties" and were, therefore, "bound to answer for the same duty of the principal." The trial court also found that Messrs. Hardy, Flowers, and Hopper had each paid the bank $280,000, even though their prorated share of the joint venture's debt was only $105,000. Accordingly, after allowing Mr. Miller credit for the $22,884.73 he had already paid NationsBank, the trial court ordered Mr. Miller to pay Messrs. Hardy, Flowers, and Hopper $96,418.23 plus pre-judgment interest in the amount of $53,726.87. The court also dismissed Mr. Miller's counterclaim seeking to recover the payments he had already made to the bank. Mr. Miller has appealed from this judgment.

## II.
### THE STATUS OF THE MEMBERS OF THE JOINT VENTURE AS CO-SURETIES

We turn first to the trial court's conclusion that Mr. Miller and the other members of the joint venture became "co-sureties" when they signed the suretyship agreements required by NationsBank.

Mr. Miller asserts on this appeal that the trial court erred as a matter of law by basing his liability on the rules governing contribution among co-sureties. We agree.

### A.

A suretyship agreement necessarily involves three parties – the debtor who is primarily liable for the debt, the creditor to whom the debt is owed, and the surety who agrees to pay the debt if the debtor does not. *A.J. Kellos Constr. Co., Inc. v. Balboa Ins. Co.*, 495 F. Supp. 408, 412 (S.D. Ga. 1980); *First Va. Bank-Colonial v. Baker*, 301 S.E.2d 8, 11 (Va. 1983); Restatement of Security § 82 (1941); Peter A. Alces, *Law of Suretyship and Guaranty* ¶¶ 1.01, 2.02[1] (1997) ("*Law of Suretyship and Guaranty*"). A surety, by agreeing to be responsible for another's debt, *Knox County v. Fourth & First Nat'l Bank*, 181 Tenn. 569, 589, 182 S.W.2d 980, 987 (1944), becomes secondarily liable to the creditor. As Professor Neil Cohen explains, the "core" of suretyship is that the obligee is entitled to performance not only from the principal obligor but also from a third party – the secondary obligor." Neil B. Cohen, *Striking the Balance: The Evolving Nature of Suretyship Defenses*, 34 Wm. & Mary L. Rev. 1025, 1027 (1993).

A debtor cannot be its own surety. *State Bd. of Equalization v. Naylor*, 161 Cal. Rptr. 280, 283 (Ct. App. 1980); *Hamilton v. Harida*, 421 A.2d 396, 399 (Pa. Super. Ct. 1980). Accordingly, a true suretyship requires that the debtor and the surety be two distinct legal entities. *Universal Auto. Ins. Co. v. Culberson*, 51 S.W.2d 1071, 1073 (Tex. Civ. App. 1932). A suretyship agreement cannot exist when one of the three distinct parties is missing. *Stabs v. City of Tower*, 40 N.W.2d 362, 370 (Minn. 1949).

### B.

The trial court's invocation of suretyship principles was appropriate only if a suretyship agreement existed between these parties. Accordingly, our task is to examine the transaction between Hardscuffle Associates, NationsBank, and the individual members of the joint venture to determine whether it qualifies as a suretyship. This examination essentially calls upon us to identify the debtor, the creditor, and the surety or sureties. *Chada v. Trapp*, 558 P.2d 1225, 1226 (Or. 1977) (determining the existence of a suretyship by identifying the three required parties).

In this case, identifying the first two necessary parties – the debtor and the creditor – is straightforward and easy. The debtor or principal obligor is the person who is liable in the first instance to the creditor. Restatement of Security § 82 cmts. c & e; *Law of Suretyship and Guaranty* ¶ 2.02[1]. In cases involving the loan of money, the debtor will ordinarily be the entity that received the loan proceeds. Here, Hardscuffle Associates, as the signatory "borrower" in the loan agreement is unquestionably the debtor or principal obligor. By the same token, the creditor is the person to whom the debt is owed. Restatement of Security § 82 cmt. d. Without question, NationsBank is a creditor of Hardscuffle Associates. The 1987 loan agreement and deed of trust notes make plain that NationsBank lent Hardscuffle Associates $1,400,000 and that Hardscuffle Associates agreed to repay the loan in accordance with the terms of the note and agreement.

The controlling question in this case is whether any party or parties other than Hardscuffle Associates stepped into the role of surety. The answer to this question turns on the differences in the legal status of the various "tool[s] employed by individuals in the conduct of private business."[1] The most common of these tools are sole proprietorships, partnerships, limited partnerships, limited liability companies and partnerships, and corporations. Each of these has significantly different legal attributes. Some are legal entities in their own right; while others, in the eyes of the law, are nothing but extensions of their principals.

Business organizations with a separate legal identity and their owners or shareholders may be sureties. It is well-settled that a corporation may serve as surety for the debts of another corporation. David S. Walls, *Promises to Keep: Intercorporate Guarantees and Fraudulent Transfers in Bankruptcy*, 19 UCC L.J. 219, 220-28 (1987). Shareholders in closely-held corporations can stand as sureties or guarantors of the corporation's debts. *See*, *e.g.*, *Squibb v. Smith*, 948 S.W.2d 752, 754 (Tenn. Ct. App. 1997); *Frank Lerner & Assoc. v. Vassy*, 599 N.E.2d 734, 736, 740 (Ohio Ct. App. 1991). Similarly, promissory notes executed by the partners in a limited partnership can be guaranteed by an entity separate from the partnership. *See*, *e.g.*, *Indemnity Ins. Co. v. American Deseret Ltd.*, 887 F. Supp. 521, 522-24 (S.D.N.Y. 1993).

However, the rules that apply to corporations do not apply with the same force to partnerships or joint ventures[2] because they do not have a separate legal identity independent of their partners or members. William D. Lewis, *The Uniform Partnership Act — A Reply to Mr. Crane's Criticism*, 29 Harv. L. Rev. 158, 158-74 (1915); Note, *The Interest of a Partner in Partnership Property*, 19 Colum. L. Rev. 404, 405 (1919). Because partnerships lack a separate legal identity, all partners are individually liable, jointly and severally, for the partnership debts. Tenn. Code Ann. § 61-1-114 (Supp. 2001); *Mahoney-Jones Co. v. Sams Bros.*, 128 Tenn. 207, 210, 159 S.W. 1094, 1094 (1913); *Production Credit Ass'n v. Ward*, No. 1, 1990 WL 39350, at *3 (Tenn. Ct. App. Apr. 9, 1990), *perm. app. denied*, (Tenn. July 23. 1990). Thus, when money is lent to a partnership, each partner becomes a primary obligor, even when one or more of the partners have guaranteed the debt individually. *Dominion Bank v. Crane*, 843 S.W.2d 14, 19 (Tenn. Ct. App. 1992).

Because a partner is already a primary obligor on a partnership debt, the general rule is that a partner cannot also be a surety or guarantor of a partnership debt. *Cooperative Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1384 (N.D. Iowa 1996); *Resolution Trust Corp. v. Teem P'ship*, 835

---

[1]*Louis K. Liggett Co. v. Lee*, 288 U.S. 517, 565, 53 S. Ct. 481, 496 (1933) (Brandeis, J., dissenting).

[2]The Tennessee Supreme Court, quoting Dean William L. Prosser, has characterized a joint venture as "something like a partnership, for a more limited period of time and a more limited purpose." *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995). As the Court views it, a joint venture is "an association of persons with intent . . . to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, . . . and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure." *Spencer Kellogg & Sons, Inc. v. Lobban*, 204 Tenn. 79, 92-93, 315 S.W.2d 514, 520 (1958). Even though joint ventures are not technically partnerships, they are governed by the same rules of law that govern partnerships. *Federated Stores Realty, Inc. v. Huddleston*, 852 S.W.2d 206, 212 (Tenn. 1992); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605-06 (Tenn. Ct. App. 2001).

F. Supp. 563, 569 (D. Colo. 1993); *In re Prestige Ltd. P'ship - Concord*, 205 B.R. 427, 433-34 (Bankr. N.D. Cal. 1997); *Rock Island Bank & Trust Co. v. Stauduhar*, 375 N.E.2d 1383, 1389-90 (Ill. App. Ct. 1978); *Boatmen's First Nat'l Bank v. Bogina Petroleum Eng'rs*, 794 S.W.2d 703, 705 n.2 (Mo. Ct. App. 1990). The Tennessee Supreme Court has compared a partner acting as surety of a partnership debt to a "man who tried to lift himself by his own boot straps." *Knox County v. Fourth & First Nat'l Bank*, 181 Tenn. at 589, 182 S.W.2d at 987.

The general rule that a partner cannot be a surety of partnership debts controls the outcome of the suretyship issues in this case. The parties-in-interest, Hardscuffle Associates, its members, and the bank did not establish a suretyship in the July 1987 transaction. In reality, the so-called suretyship agreements executed by Hardscuffle Associates' members had the legal effect of altering what otherwise would have been each member's unlimited joint and several liability for the joint venture's debts. As a result of these agreements, each member's individual liability was made several only and was capped at $280,000. Accordingly, these agreements actually served as "limitation of liability" agreements benefitting the individual members of the joint venture.[3] Because no suretyship was ever created, the trial court erred by classifying the members of Hardscuffle Associates as "co-sureties" and by basing its decision on suretyship principles.

### III.
### MESSRS. HARDY'S, FLOWERS'S, AND HOPPER'S RIGHT TO CONTRIBUTION

Our conclusion that the trial court erroneously relied on principles of suretyship law to decide this case does not end our task. The trial court also based its decision on the principle of partnership law that permits partners to obtain contribution from other partners. Mr. Miller asserts that the trial court erred on this point as well because the members of Hardscuffle Associates were not jointly and severally liable to NationsBank for Hardscuffle Associates's debt.

### A.

Contribution is an equitable principle that requires persons under common obligation to share that obligation equally. William H. Inman, *Gibson's Suits in Chancery* § 419 (7th ed. 1988). A claim for contribution arises when one of several parties jointly liable for a common debt pays more than his or her share to discharge the debt for the benefit of all. Once a person has paid more than his or her fair share of a common debt,[4] he or she may use an action for contribution as a vehicle for obtaining restitution from the other persons who are equally liable on the debt. *Newson v. Shackleford*, 163 Tenn. 358, 361, 43 S.W.2d 384, 385 (1931); *Rhea v. White*, 40 Tenn. (3 Head) 121, 122 (1859); *Winebarger v. Winebarger*, 653 S.W.2d 746, 748 (Tenn. Ct. App. 1983).

---

[3]The suretyship agreements benefitted the members of Hardscuffle Associates because they capped their individual liability at $280,000. Without these agreements each member would have been individually liable for the full amount of the debt.

[4]A person is not entitled to contribution until he or she has paid more than his or her fair share of a joint obligation. *Frazier v. Frazier*, 221 Tenn. 705, 716, 430 S.W.2d 655, 660 (1968); *Young v. Kittrell*, 833 S.W.2d 505, 508 (Tenn. Ct. App. 1992).

A right of contribution presupposes common or joint liability among the parties. When an obligation is not joint, its discharge does not give rise to a claim for contribution against others. *Jobe v. O'Brien*, 21 Tenn. (2 Hum.) 34, 36 (1840); *Squibb v. Smith*, 948 S.W.2d at 754; *TRW-Title Ins. Co. v. Stewart Title Guar. Co.*, 832 S.W.2d 344, 346 (Tenn. Ct. App. 1991). Accordingly, contribution, whose purpose is to equalize a common burden, is inconsistent with several or individual liability. As the Illinois Court of Appeals has explained:

> when individuals are severally obligated, the relationship between them is distinctly divided. Whether one individual fulfills a several obligation or not has no effect upon the duty of any other obligor. His obligation is strictly individual. On the other hand, an action for contribution is dependent upon a common obligation and performance by one or more than his aliquot share of the burden. Since this is impossible where the obligation is several, [where that is the case,] there can be no action for contribution.

*Shapiro v. Chernoff*, 279 N.E.2d 454, 461 (Ill. App. Ct. 1972).

These contribution principles have been repeatedly invoked in the context of partnerships. Because partners are jointly and severally liable for partnership debts, a partner who pays a partnership debt out of his or her own funds is entitled to contribution from the other partners when the partnership assets are insufficient to reimburse the partner. *Equitable Trust Co. v. Central Trust Co.*, 145 Tenn. 148, 184, 239 S.W. 171, 181 (1922); *see also Shemper v. Hancock Bank*, 40 So. 2d 742, 744 (Miss. 1949); *State ex rel. Angle v. Hull*, 930 S.W.2d 25, 29 (Mo. Ct. App. 1996).

**B.**

Determining whether the members of Hardscuffle Associates are jointly and severally liable for the joint venture's debts requires us to examine the documents embodying the July 1987 loan transaction. Our goal is to give the fullest possible effect to the parties' agreement consistent with the applicable legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). When several documents are integral parts of the same transaction, we will construe each of the documents and the terms in the documents in light of the other documents memorializing the transaction. *McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 182-83 (Tenn. 1973); *Oman Constr. Co. v. Tennessee Cent. Ry.*, 212 Tenn. 556, 573-74, 370 S.W.2d 563, 570-71 (1963); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 599 (Tenn. Ct. App. 1999).

Had the parties not executed the suretyship agreements as part of the July 1987 financing transaction, the original ten members of the Hardscuffle Associates joint venture would have been jointly and severally liable for the bank's $1,400,000 loan to Hardscuffle Associates. However, for reasons not entirely evident in the record, the bank and the members of Hardscuffle Associates modified this liability when they signed the suretyship agreements. These agreements changed each member's otherwise joint and several liability to several liability capped at $280,000. The effect of

these agreements was spelled out in an August 24, 1988 letter to the members in which one of the bank's vice presidents wrote:

> Please accept this letter as [NationsBank's] acknowledgment that the personal guarantees of the individual joint venture partners who executed the . . . note are not on a joint and several basis. The extent to which each joint venture partner is liable was established in the suretyship agreements . . . [executed] at the initial closing in July 1987. Per the terms of the suretyship agreements, the right of recovery against the individual partners is limited to $280,000 each, plus interest and [collection costs].

The actions of the parties following Hardscuffle Associates' default are consistent with the interpretation that the suretyship agreements changed each member's liability from joint and several to several. Following the default, the bank dealt with each of its members, not as if they were jointly liable, but as if each one of them was individually liable up to $280,000. The bank never pursued any of the members of Hardscuffle Associates as if any one of them was jointly and severally liable for the whole debt. Instead, it went after each member separately for the $280,000 maximum liability under the suretyship agreement. For example, according to the complaint, the bank cancelled and returned Mr. Flowers's suretyship agreement after he paid the bank $280,000. Similarly, after Mr. Hopper paid the bank $100,000 in October 1992, the bank modified his suretyship agreement by reducing his liability to $180,000.

Based on the essentially undisputed facts, Messrs. Hardy, Flowers, and Hopper did not pay an obligation that was common to all members of the joint venture. Rather, each of them paid the bank in accordance with the separate contractual obligation in their suretyship agreements. Because these obligations were individual rather than common, Messrs. Hardy, Flowers, and Hopper never paid more than their share of a common obligation. Therefore, the trial court erred by concluding that they had a right to seek contribution from Mr. Miller.

## IV.
### MR. MILLER'S COUNTERCLAIM

Finally, Mr. Miller asserts that the trial court erred by denying his claim for reimbursement of the $22,884.73 he paid to NationsBank under his July 1987 suretyship agreement. He insists that he was no longer personally liable for the joint venture's debts after his fellow members expelled him in mid-1991 and, therefore, that he was entitled to reimbursement for the payments he made on the joint venture's behalf. Mr. Miller's argument is not well-taken because he became directly and primarily liable to the bank when he signed the suretyship agreement in July 1986.

The law implies a contract between debtors and their sureties that if the surety is compelled to pay part or all of the debtor's debt to a creditor, the surety is entitled to reimbursement from the debtor. *See Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 95 (Tenn. Ct. App. 1979); *Akers v. Gillentine*, 33 Tenn. App. 212, 214-17, 231 S.W.2d 372, 373-74 (1950); Restatement (Third) of Suretyship and Guaranty § 22 (1996); *Law of Suretyship and Guaranty* ¶ 6.03. The law

deems the duty to reimburse as fastening on the principal at the time the suretyship is made. *See United States v. Tilleraas*, 709 F.2d 1088, 1091 (6th Cir. 1983); *In re Deal's Estate*, 46 N.E.2d 643, 647 (Ohio Ct. App. 1942).

Section II of our opinion dictates the disposition of this issue. None of the members of Hardscuffle Associates became sureties for the partnership's debt because, as a matter of law, they could not stand as sureties on the same debt they simultaneously owed as principal obligors. Because Mr. Miller was not a surety, we conclude that the $22,884.73 he paid was in partial satisfaction of his own several liability to NationsBank under his July 1987 suretyship agreement. He has no right of reimbursement for paying his own debt. Therefore, we affirm the dismissal of his reimbursement counterclaim.

## V.

For the reasons stated herein, we reverse the judgment against Robert Bond Miller for $150,145.10 and affirm the dismissal of Mr. Miller's counterclaim for reimbursement. We remand the case to the trial court for whatever further proceedings are required, and we tax one-half of the costs of this appeal to Robert B. Miller and his surety and one-half, jointly and severally, to Charles Hardy, Roy C. Flowers, and Marvin Hopper for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE