[No. B216493. Second Dist., Div. Six. July 29, 2010.]

ROBERT W. PURDUM, Plaintiff and Appellant, v.
BARTON RAY HOLMES, Defendant and Respondent.

COUNSEL

Thompson & King and Wayne T. King for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Mary C. Loureiro for Defendant and Respondent.

OPINION

**COFFEE, J.**—Appellant Robert W. Purdum appeals from an order setting aside the default of respondent Barton Ray Holmes and from judgment of dismissal after an order sustaining Holmes's demurrer to appellant's first amended complaint.

Appellant contends that (1) the court abused its discretion when it set aside Holmes's default and (2) that the first amended complaint was not barred by the statute of limitations set forth in Code of Civil Procedure section 338, subdivision (f)[1] and the court should have permitted appellant to plead around the statute by adding a cause of action for breach of fiduciary duty. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In his first amended complaint, appellant alleged that he and Pamela Ann Welch each owned a 50 percent interest in a piece of real property in Simi Valley (the property). Respondent Holmes is licensed as a notary and as a real estate broker.

Appellant alleged that in 2002 he "agreed to use [Holmes] to notarize two deeds." The purpose of the deeds was to temporarily remove appellant's

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

name from the property's title so that appellant and Welch could get a loan. One deed would transfer appellant's interest to Welch. The other deed would transfer the interest back to appellant, after the loan was obtained. The deeds were to be signed simultaneously.[2]

On September 2, 2002, Welch signed appellant's name to the first deed. She did not sign the other deed. Appellant was not present. Holmes notarized Welch's signature as if it were appellant's, but Holmes knew that it was not appellant's signature. On September 4, 2002, the deed was recorded, giving Welch sole title to the property.

Appellant alleges that he first discovered that the deed had been recorded on September 20, 2006. Appellant asked Holmes why he had notarized the signature. Holmes said he did not notarize the signature, and that someone must have used his notary stamp without his knowledge. Appellant believed Holmes because appellant had used Holmes as a notary and as a real estate broker in the past and appellant trusted Holmes.

Appellant filed a quiet title action against Welch. Holmes was deposed on March 14, 2008. Holmes admitted that he notarized the signature, even though he knew it was not signed by appellant. Appellant alleges that this was his first actual notice that Holmes had notarized the signature.

After the deposition, appellant's counsel sent a prelitigation demand letter to Holmes pursuant to the Consumers Legal Remedies Act (CLRA). (Civ. Code, § 1750.) He attached a draft complaint asserting claims against Holmes for negligence, unfair competition (Bus. & Prof. Code, § 17200) and violation of the CLRA, all based upon Holmes's notarization of the signature. Holmes did not respond to the demand letter.

On September 11, 2008, more than six years after the deed was signed and notarized, appellant filed the present action against Holmes. Appellant initially asserted causes of action for negligence, unfair competition and violation of the CLRA. Appellant personally served Holmes on September 25, 2008. Appellant took Holmes's default on Monday, October 27, 2008, 32 days after he served Holmes. That same day, Holmes sent a copy of the complaint to his surety company. On November 14, 2008, an attorney for Holmes called counsel for appellant and learned of the default.

On December 24, 2008, Holmes moved to set aside the default on the grounds that the default was entered through excusable neglect. Holmes filed

---

[2] Appellant alleges in his first amended complaint that, "in order to obtain financing, one deed would transfer [appellant's] title to [Welch] and one deed from [Welch] to [appellant] would transfer one-half of the title back to [appellant]; the deeds were to be signed simultaneously by [Welch] and [appellant]."

a proposed demurrer with his motion. In support of his request for relief, Holmes declared that he was inexperienced with the law, he had never been sued, he does not remember when he was served, and he thought he did not need to respond because the allegations were false. Holmes also declared that he sent the complaint to his surety company on October 27, after he learned from an attorney friend that he needed to respond. He did not know at the time that his default had been taken that day.

In further support of the motion, a representative of Holmes's surety company declared that she received the complaint on October 28 and forwarded it to defense counsel on October 29 for handling. Defense counsel declared that she received the complaint on October 30, without a proof of service. She learned of the default on November 14 from opposing counsel and began preparing the motion to set the default aside.

Appellant opposed the motion. His attorney declared that he had personally served Holmes on September 25, that no one contacted him on behalf of Holmes until November 14, that he sent documents related to the case to Holmes's counsel on November 19, and that no one had informally requested that he set aside Holmes's default. Appellant objected, on hearsay grounds, to the statement in Holmes's declaration that his attorney friend said he needed to respond.

Appellant produced court records that showed Holmes had been sued before. He also produced excerpts of Holmes's deposition in which Holmes admitted to notarizing the signature while knowing that it was not appellant's signature. In the deposition, Holmes testified that he did this because appellant instructed him by phone to do so. Holmes said that appellant and Welch were in a hurry to get appellant's name off the title because appellant had bad credit and they were trying to get a loan. Appellant told Holmes he would stop by later to sign his journal, but appellant never did.

In support of his opposition, appellant declared that after he served Holmes, he saw Holmes at the bank and Holmes acknowledged that he had been served. Appellant did not identify the date of this contact. Appellant also declared that he had known Holmes a long time and had worked for Holmes when he, appellant, was 19 years old. Appellant declared that he would not have signed the deed that quitclaimed his interest to Welch unless she had simultaneously signed the reciprocal quitclaim deed. Appellant declared that, after Welch obtained sole title, she encumbered the property with $325,000 in loans and appellant does not know what she did with the proceeds.

The court granted the motion to set the default aside and allowed Holmes to file the proposed demurrer. The court sustained the hearsay objection to

Holmes's statement about his attorney friend and expressed concern about Holmes's credibility. However, the court found that the equities weighed in favor of relief because Holmes had acted with reasonable diligence when he presented the complaint to his surety on October 27, appellant had acted hastily when he took Holmes's default on the first possible day, and appellant would not be prejudiced if the default were set aside.

In a subsequent hearing, the court sustained Holmes's demurrer to the complaint, with leave to amend, on the grounds that the complaint was barred by the six-year limitation period for commencing an action against a notary. (§ 338, subd. (f)(3).) The court encouraged appellant to amend, "in any fashion you find appropriate, either tolling or other additional facts that show that this [statute of limitations] does not apply."

Appellant filed a first amended complaint, which added a cause of action for breach of fiduciary duty and allegations that Holmes was his fiduciary because they had a "longstanding relationship," he trusted Holmes, and he had used Holmes as a notary and real estate broker in the past. Holmes responded by demurrer, again asserting that the entire action was time-barred.

The court sustained the demurrer to the first amended complaint, without leave to amend. The court found that the action was barred by section 338, subdivision (f)(3), because the entire action was predicated on the notarial act that had occurred more than six years before the complaint was filed.

In its tentative ruling, the court also found that the new cause of action for breach of fiduciary duty was beyond the scope of the order granting leave to amend. Appellant challenged this finding during argument on the motion. The court responded that, whether or not the new cause of action was within the scope of leave granted, appellant could not state a valid cause of action for breach of fiduciary duty because it was based on Holmes's conduct as a notary and was barred by section 338, subdivision (f)(3). The court denied leave to amend based on appellant's inability to state a valid cause of action.

## DISCUSSION

### *The Court Did Not Abuse Its Discretion When It Set Aside Holmes's Default*

Appellant contends that the court abused its discretion when it set aside Holmes's default. We disagree because the record contains evidence of excusable neglect that supports the trial court's discretionary decision to grant relief. Moreover, the default was void.

■ A trial court may, upon just terms, relieve a party from a judgment taken against him through his excusable neglect. (§ 473, subd. (b).) Its decision to grant or deny relief will not be disturbed on appeal absent clear abuse. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056].) The policy of the law favors a hearing on the merits. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) Therefore, when a party in default moves promptly to request relief, "very slight evidence is required to justify a trial court's order setting aside a default. [Citation.]" (*Ibid.*)

Appellant contends that there was no evidence to support the order here because the court had sustained objections to Holmes's declaration and had found that Holmes was not credible. Holmes's declaration was not the only evidentiary support for the order. Moreover, only one statement in Holmes's declaration was excluded. Appellant did not object to any other part of Holmes's declaration, and did not object to the declarations of Holmes's attorney and Holmes's surety. The court relied on all of those declarations to make its decision. The trial court did not strike any part of Holmes's declaration for lack of credibility. The court only expressed concern: "[T]he points you raise are valid and [Holmes's] credibility comes into play by virtue of the discrepancies . . . . So he is not completely unfamiliar with lawsuits and how they work . . . ." The court balanced its concerns against the fact that appellant had taken Holmes's default without warning on the first day possible ("a pretty quick trigger"), that Holmes had tendered his complaint to the surety on the same day, and that appellant had not demonstrated any prejudice.

We will not disturb the trial court's determination of controverted facts. (*Zamora v. Clayborn Contracting Group, Inc., supra,* 28 Cal.4th at p. 258.) The court's decision was supported by admissible evidence that Holmes sent the complaint to his surety on October 27, that his surety forwarded it to counsel for handling within a few days, that counsel did not learn of the default until November 14 and that counsel brought a motion for relief about five weeks later. Whether Holmes's neglect was or was not excusable in the circumstances was a matter for the court's sound discretion. It did not abuse its discretion when it granted relief.

■ We also note that the default could have been set aside as void, because it was taken on Holmes's last day to respond. A defendant has 30 days after service is complete to respond. Service on Holmes was complete on September 25, 2008. (§ 415.20.) The 30th day was a Saturday, October 26, so his time to respond was extended to Monday, October 27, 2008, the day on which appellant prematurely took his default. (§ 12a.)

### The Action Was Time-barred

We reject appellant's contention that his action was timely filed. The trial court correctly concluded that each of appellant's causes of action against Holmes was barred by the six-year maximum limitation period that is prescribed for an action against a notary in his official capacity by section 338, subdivision (f)(3), regardless of delayed discovery.

The statute of limitations on a claim against a notary is three years, but there is a six-year maximum period within which an action must be brought regardless of when the misdeed is discovered. (§ 338, subd. (f)(3); see *Butterfield v. Northwestern Nat'l Ins. Co.* (1980) 100 Cal.App.3d 974, 979 [161 Cal.Rptr. 280].) The general limitation period for an action against a notary in his official capacity is three years. (§ 338, subd. (f)(1).) If the action is based on notarial malfeasance, it does not accrue until the aggrieved party discovers the underlying facts (*ibid.*), and must be filed within one year of discovery (or three years of the notarial act, whichever is later). (*Id.*, subd. (f)(2).)[3] But every action against a notary in his official capacity is subject to a six-year maximum limitation period running from the date of the notarial act. The six-year limit applies regardless of whether the action is based on malfeasance and whether its discovery is delayed. (§ 338, subd. (f)(3).)

In *Butterfield*, a claim against a notary's surety for his false acknowledgment of a signature was barred by the six-year maximum limitation period even though the aggrieved party discovered the underlying facts less than a year before raising them in a cross-complaint for indemnity. (*Butterfield v. Northwestern Nat'l Ins. Co., supra*, 100 Cal.App.3d at pp. 976, 979.) The trial court properly sustained the notary's demurrer to the cross-complaint without leave to amend because the claim was barred by section 338. Section 338 was subsequently restructured without any change material to this analysis. (Stats. 2005, ch. 383, § 1.5; Sen. Bill No. 1110 (2005–2006 Reg. Sess.).)

Each cause of action in appellant's first amended complaint was against Holmes in his official capacity as a notary. A notary's official duties

---

[3] Section 338, subdivision (f) consists of three subsections which state: "Within three years: [¶] . . . [¶] (f)(1) An action against a notary public on his or her bond or in his or her official capacity except that any cause of action based on malfeasance or misfeasance is not deemed to have accrued until discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action. [¶] (2) Notwithstanding paragraph (1), an action based on malfeasance or misfeasance shall be commenced within one year from discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action or within three years from the performance of the notarial act giving rise to the action, whichever is later. [¶] (3) Notwithstanding paragraph (1), an action against a notary public on his or her bond or in his or her official capacity shall be commenced within six years."

include taking the acknowledgment of deeds, verifying the identity of signatories, and collecting their signatures in a journal. (Gov. Code, §§ 8205–8207.)

■ The nature of the right sued upon, not the form of action or relief demanded, determines the applicable statute of limitations. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)

■ This action was commenced on September 11, 2008, more than six years after Holmes notarized the signature on September 2, 2002. Appellant's allegation that he did not discover Holmes's misdeed until he was deposed in 2008 is immaterial, even if it is true.[4] Under the plain meaning of section 338, the six-year limitation of subdivision (f)(3) applies "[n]otwithstanding" the provision for delayed discovery of malfeasance set forth in subdivision (f)(1).

Appellant contends that his causes of action for unfair business practices and for violation of the CLRA are separate and distinct and should be governed by separate statutes of limitation. (Bus. & Prof. Code, § 17208 [four years from accrual]; Civ. Code, § 1783 [three years from commission of method, act or practice].) But appellant conceded in the trial court that "notarial acts" were the "foundation for" his causes of action for unfair business practices and violation of the CLRA. They are governed by section 338, subdivision (f).

Even if Business and Professions Code section 17208 and Civil Code section 1783 applied, the law is unsettled whether they may be tolled for delayed discovery. Appellant relies wholly on dicta in *Meyer v. Sprint Spectrum, L.P.* (2009) 45 Cal.4th 634, 645 [88 Cal.Rptr.3d 859, 200 P.3d 295], in which the California Supreme Court observed that "the statute of limitations set forth in section 1783 has been interpreted [by a federal trial court] to run ' "from the time a reasonable person would have discovered the basis for a claim." ' [Citation.]" (*Ibid.*, quoting *Chamberlan v. Ford Motor Co.* (N.D.Cal. 2005) 369 F.Supp.2d 1138, 1148.) Whether the federal trial court's interpretation is correct or can be extended to Business and Professions Code section 17208 is outside the scope of issues necessary to resolution of this appeal.

The court did not abuse its discretion when it denied leave to add the cause of action for breach of fiduciary duty. That cause of action, too, was based on Holmes's notarial acts in 2002 and subject to the six-year limitation of section 338, subdivision (f)(3).

---

[4] We do not reach the question of whether appellant was put on inquiry notice as a matter of law when he learned in September 2006 that the deed had been recorded. (*Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].)

## DISPOSITION

The judgment and the orders appealed from are affirmed. Appellant shall pay respondent's costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.