[Civ. No. 2835.   Fourth Dist.   Dec. 19, 1941.]

CHESTER D. GUNN, Public Administrator, as Special Administrator, etc., Respondent, v. ANTOINETTE GIRAUDO, Appellant.

Lewis R. Kirby, George A. Malette, John Coker, Walter E. Doherty, Jr. and Herbert S. Avery for Appellant.

Thomas Whelan, District Attorney, R. E. Jenson, Deputy District Attorney, Gray, Cary, Ames & Driscoll and Burton D. Wood for Respondent.

WEST, J. pro tem.—This is an appeal by defendant from a judgment of the Superior Court of San Diego County decreeing that defendant has no valid or enforceable claim against Allan Bradford Monks, deceased, or against the assets of his estate, or against plaintiff as special administrator of the Monks estate, either by reason of certain instruments executed by decedent in his lifetime or by reason of any alleged oral agreements between decedent and defendant, and further rescinding, annulling and canceling said written instruments and directing the delivery of such instruments for cancellation.

Monks died on December 24, 1937. Thereafter plaintiff, as Public Administrator of San Diego County, was appointed

special administrator of his estate with general powers. He instituted an action against defendant for declaratory relief to determine the validity of certain documents purportedly executed by deceased during his lifetime and of certain purported oral contracts between decedent and appellant, and sought to cancel and annul the same for lack of consideration and for fraud and undue influence allegedly resulting in their procurement.

Many of the facts out of which this litigation arose are stated in the opinion this day filed in *Estate of Monks, ante,* p. 603 [120 Pac. (2d) 167], a companion case to this, and no detailed repetition of the factual matters will be given. A brief statement here will suffice to clarify the issues, as no attack is made on any finding of fact on the ground of lack of evidentiary support, the challenge to the judgment being formal in nature. The complaint of plaintiff alleged that a ''justiciable'' controversy existed between the parties concerning the validity and enforceability of the written instruments and of the purported oral agreements, the nature of which is as follows: On August 15, 1928, decedent executed and delivered to appellant 21 promissory notes totaling the sum of $30,000, together with a chattel mortgage securing all of the notes and purporting to hypothecate his interest in the estate of his grandfather. In January, 1929, he executed a document acknowledging an indebtedness of $12,900 on account of the alleged purchase from appellant of certain jewelry. On September 5, 1929, he executed and delivered to one Watson, the foster-father of appellant, his note in the sum of $10,000, which note was thereafter assigned to appellant. On February 28, 1930, he executed a document purporting to be an acknowledgment of indebtedness to appellant in the sum of $45,894.07, on account of advances for his benefit and of payments to him by appellant. On December 30, 1930, he executed and delivered to appellant a document referred to as a ''Reimbursement Power of Attorney,'' by which appellant was to collect principal and interest of decedent's share in the estate of the grandfather hereinbefore referred to by way of reimbursement to appellant for advances to him. On January 7, 1931, he executed a note for $30,000, purporting to secure payment of the 21 notes first referred to. In addition, it appears that appellant, by virtue of cer-

tain oral agreements concerning loans and also respecting the sale of a watch, claimed that decedent was further indebted to her in an additional amount of $5,300. It was alleged that defendant threatened to pursue claims based upon the oral and written contracts against a special administrator of decedent's estate appointed in the State of Massachusetts in an ancillary administration, and further that since all of the purported contracts had been entered into in California and that since decedent had resided for many years prior to his death in San Diego County a multiplicity of actions would be avoided by the determination of the respective rights and responsibilities of the parties in the suit filed.

In her answer defendant admitted the existence of the documents above referred to and also by her pleading admitted the existence of the obligations growing out of the purported oral contracts, but denied that any claim had been asserted by her against the plaintiff on account of the indebtedness represented. She did not answer any of the allegations contained in the causes of action seeking cancellation of the alleged contracts, written or oral. The case was not consolidated for trial with the trial of the will contests in the *Estate of Monks,* but was tried at the same time and on much of the same evidence as was adduced in the probate case. This was done over the objection of the appellant. At the conclusion of the trial the court made findings to the effect that a controversy did exist between plaintiff and defendant; that the various purported obligations of decedent to defendant had been obtained by fraud and by undue influence and that there was no consideration for any of them; that no oral agreements requiring decedent to pay the money to defendant had been made; and finally, that recovery on each and all of said purported agreements, both oral and written, was barred by the statute of limitations. Judgment was entered for plaintiff and this appeal followed.

Appellant's contentions may be summarized as follows: first, that there was no proper situation presented for the granting of declaratory relief because no actual controversy existed; second, that the judgment entered could not affect Massachusetts proceedings presented on the same issues; third, that plaintiff had other established remedies avail-

able; and fourth, that the trial court, sitting as a court of probate, had no jurisdiction to hear the equitable issues presented.

Referring to the first of these contentions, it appears that appellant misinterprets the purpose for the adoption of section 1060 of the Code of Civil Procedure. She asserts that since she has filed no claim with the administrator under section 700 of the Probate Code, no rights against plaintiff have been claimed by her and therefore no case "of actual controversy relating to the legal rights and duties of the respective parties" existed. But it cannot be denied and was not denied by appellant that she claimed and asserted that she was the owner and holder of both written and oral obligations of decedent. Her answer in this regard merely denies that any claim has been asserted thereon against the plaintiff. Her construction of the statute is that there was no duty upon nor right vested in plaintiff to act with respect to the situation until creditors' claims were presented, and upon such presentation, if rejected, to await suit by appellant upon them.

Appellant's contention is predicated upon what we deem to be a far too narrow view of the statute. If her view were accepted, the privilege would be taken from a person to be charged in determining his rights and liabilities arising by virtue of contracts, the attempted enforcement of which might well seriously invade his rights before his status could be determined. The very language of the statute does not contemplate such a situation. It provides in part: "Such declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Code Civ. Proc. sec. 1060.) Our courts have taken the view that the section was adopted to provide a valuable enlargement of the judicial power of our courts. As was said in *Tolle* v. *Struve,* 124 Cal. App. 263 [12 Pac. (2d) 61]:

"It was a defect of the judicial procedure which developed under the common law that the doors of the courts were invitingly opened to a plaintiff whose legal rights had already been violated, but were rigidly closed upon a party who did not wish to violate the rights of another nor to have his own rights violated, thus compelling him, where a controversy arose with his fellow, to run the risk of a violation of his fellow's rights or to wait until the anticipated wrong

had been done to himself before an adjudication of their differences could be obtained. Thus was a penalty placed upon the party who wished to act lawfully and in good faith which the statute providing for declaratory relief has gone far to remove.''

It is manifest from appellant's pleading, in which she does not deny that she is threatening to institute litigation upon the purported obligations but in fact affirms that she has done so, that she contends she is the owner of a large number of enforceable contracts of the decedent, and while her recovery thereon is dependent upon future action in the prosecution of her claims, nevertheless, her ultimate rights would of necessity depend on the question whether they were procured validly and were supported by consideration. All of these questions and all of her rights to compel performance were determined by the judgment. This, it seems to us, is consistent with the existence of an actual controversy and inconsistent with her theory that none could be presented in this litigation. It is the relationship between the parties created by the contract and more specifically the interpretation of their respective rights and duties under it which the statute looks to, and not merely whether the breach of one or the other has raised an issue presently. In *Strong* v. *Hancock*, 201 Cal. 530 [258 Pac. 60], the question was presented whether the enactment of section 1060, *supra*, would alter the previously pronounced rule that the owner of property which was affected by covenants and restrictions running with the land could not, prior to breach, maintain an action to quiet his title against such covenants and restrictions. Other circumstances rendered the answering of the question unnecessary to the decision, but in a special concurring opinion it was stated:

''It was held on the former appeal, following a recognized and controlling line of authorities, that a land owner in the tract had no standing in court in his endeavor to quiet his title against and to have declared void the restrictions on his lot, and that it was only when it was sought to enjoin a breach of such restrictions or to declare a forfeiture that equity would refuse, because of changed conditions, to lend its aid in the enforcement thereof. It was further held on the former appeal that it was 'premature, at least, to determine the equities of the parties as they might exist at

some future time in the event of such breach.' This action was commenced prior to 1921. In that year sections 1060, 1061, and 1062, relating to declaratory relief, were added to the Code of Civil Procedure. The supplemental complaint was filed after those additions to the code. This change in the law was, in my opinion, sufficient to enable the substituted plaintiff to proceed thereunder and to have his status declared under the conditions as were then shown to exist, and this, notwithstanding the old rule which required him to be hazardously active in the breach of such restrictions and passive in litigation.''

The foregoing language was quoted approvingly in *Hess* v. *Country Club Park, et al.*, 213 Cal. 613 [2 Pac. (2d) 782]. In our opinion it sheds much light on the proper use of the remedy of declaratory relief.

We must conclude that an actual controversy did exist between the parties within the contemplation of the statute and as it has been interpreted and applied in California.

▆ It may be added that appellant has assumed that respondent is seeking declaratory relief only, and no other remedy. However, it appears that in addition to the cause of action brought under the provisions of section 1060, *supra*, plaintiff pleaded three other causes of action which respectively alleged lack of consideration, fraud and undue influence with regard to execution of the purported agreements, written and oral. We are constrained to say that even if the prayer for declaratory relief were denied under the factual situation here presented, nevertheless the court having before it a proper case for equitable relief, will not refuse a complete scrutiny of the issues but will grant the relief that the proof warrants, even though it may not be the same as prayed for. (*Zimmer* v. *Gorelnik*, 42 Cal. App. (2d) 440 [109 Pac. (2d) 34].)

▆ Upon the question of whether the judgment would be followed by the Massachusetts court to which the same issues are tendered, little need be said. If there was jurisdiction vested in the trial court, no concern need be felt as to the attitude of another which might challenge either the propriety of the judgment or its validity. Appellant evidently contemplates that the tribunals of Massachusetts will at some time decide the same matters, for she states in her brief that ''any judgment obtained in the courts of California by the

plaintiff could not operate as *res adjudicata* of the proceedings pending in Massachusetts; therefore the prosecution of such proceedings would be an absolute futility.'' The question of whether the judgment here will bar a different one in another state may best be answered by the statement that we are not concerned with that. There is nothing in the record to indicate that anyone contends that there is privity between the plaintiff and the Massachusetts administrator. It is quite clear that anything done by plaintiff is under his authority as an officer of the California court and it is equally apparent that any action taken by the Massachusetts administrator is limited to his authority under the court's appointment there. In *Richards* v. *Blaisdell*, 12 Cal. App. 101 [106 Pac. 732], is was said:

'' . . . it appears to be the settled rule that the allowance of a claim by an administrator in one jurisdiction is not only not conclusive against an administrator in another, but it is not even evidence.''

Any proceedings instituted in Massachusetts against the ancillary administrator would not affect the judgment here under attack and is no argument in favor of its reversal, and this would be true even if a judgment recognizing the Giraudo claim had been entered in Massachusetts before this action was instituted. Section 1913 of the Code of Civil Procedure provides as follows:

''The effect of a judicial record of a sister state is the same in this state as in the state where it was made, except that it can only be enforced here by an action or special proceeding, and except, also, that the authority of a guardian or committee, or of an executor or administrator, does not extend beyond the jurisdiction of the government under which he was invested with his authority.''

The judgment is also attacked on the theory that inasmuch as plaintiff had other available remedies, declaratory relief was not available to him. Appellant cites several cases in support of her position. No purpose would be served by discussing any of her authorities upon this point. An examination of them indicates that none of them bear in any measure upon the proposition which they are claimed to establish. Furthermore, the contention made is answered not only by the provisions of section 1060, *supra*, that the court may make the declaration ''whether or not further relief is

or could be claimed at the time'', but by the language of section 1062 of the Code of Civil Procedure, which provides that the remedies are cumulative and are not restrictive of other remedies. There are also several cases in which the question has arisen. In *Wollenberg* v. *Tonningsen*, 8 Cal. App. (2d) 722 [48 Pac. (2d) 738], it was said:

"The third point raised by the appellant is that the action for declaratory relief will not lie when there is an available remedy in an ordinary action at law or in equity. The answer is that the code does not so limit that right of action. Appellant cites *Stenzel* v. *Kronick*, 102 Cal. App. 507, [283 Pac. 93], and *Hamburger & Sons* v. *Kice*, 129 Cal. App. 68 [18 Pac. (2d) 115], in support of his argument. Neither case is in point. Both applied the provisions of section 1061 of the Code of Civil Procedure which gave the court discretion to refuse to exercise the power where it is not necessary or proper under the circumstances.'' (See also *Rolapp* v. *Federal Building & Loan Assn.*, 11 Cal. App. (2d) 337 [53 Pac. (2d) 974]; *Fritz* v. *Superior Court*, 18 Cal. App. (2d) 232 [63 Pac. (2d) 872].)

■ The last point requiring consideration is that the trial court, sitting in the probate matter arising by virtue of the filing of petitions for probate of the two purported wills of decedent and the contests instituted, was without power to exercise the functions of the superior court sitting in the case of *Gunn* v. *Giraudo*. She cites cases, notably *Richards* v. *Wetmore*, 66 Cal. 365 [5 Pac. 620], and *Faias* v. *Superior Court*, 133 Cal. App. 525 [24 Pac. (2d) 567]. These citations are authority for the rule that a court sitting in probate may not exercise general civil jurisdiction and conversely that sitting as a court of general civil jurisdiction it may not assume the functions of a probate court. As a proposition of law, appellant's contention may be accurate, but it does not appear that such dual capacity was here assumed. The two proceedings were not heard as one matter. The record discloses that while the causes were tried at the same time and while much of the evidence adduced clearly affected both matters, nevertheless they were submitted on distinct pleadings, findings were separately made, and the judgments were in no way confused one with the other. The trial was lengthy and by the means adopted much time was saved for court, counsel and witnesses. There can be

no question that the court had jurisdiction over each class of case presented. It is true that appellant objected to the consideration of the two matters at the same time. This cannot alter the fact that the propriety of doing so has been determined. In *Estate of Arms,* 186 Cal. 554 [199 Pac. 1053], it was held proper where the parties stipulated to do so. Such stipulation would not vest jurisdiction if none otherwise existed. Therefore, assuming that it was error for the court to proceed in a dual capacity, which we doubt, the question of jurisdiction was not involved. There was no showing that any injury resulted to appellant through the procedure in any event and thus the provisions of section $4\frac{1}{2}$ of article VI of the Constitution may properly be invoked.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1942.