[No. S153846. Jan. 29, 2009.]

PAMELA MEYER et al., Plaintiffs and Appellants, v.
SPRINT SPECTRUM L.P., Defendant and Respondent.

**COUNSEL**

Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno; Franklin & Franklin and J. David Franklin for Plaintiffs and Appellants.

The Sturdevant Law Firm, James C. Sturdevant and Monique Olivier for National Association of Consumer Advocates as Amicus Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Michele Floyd, Raymond A. Cardozo and Dennis Peter Maio for Defendant and Respondent.

Robin S. Conrad; Mayer Brown and Donald M. Falk for United States Chamber of Commerce as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—In this case, plaintiffs sued defendant cellular telephone company alleging that its arbitration agreement and other remedial provisions were unconscionable, although plaintiffs did not otherwise allege that these provisions had been enforced against them or caused them damage. There are two questions before us. First, whether under these circumstances, a plaintiff may obtain injunctive relief to compel the removal of the allegedly unconscionable provisions under California's Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). Second, whether a plaintiff may obtain declaratory relief pursuant to Code of Civil Procedure section 1060 to declare these provisions unlawful and unenforceable.

We conclude that a plaintiff has no standing to sue under the CLRA without some allegation that he or she has been damaged by an alleged unlawful practice, an allegation plaintiffs do not sufficiently make here. Moreover, we conclude the trial court did not abuse its discretion in ruling that declaratory relief was not appropriate under these circumstances. We therefore uphold the Court of Appeal's judgment affirming the trial court's order sustaining a demurrer to plaintiffs' complaint.

### I. FACTS AND PROCEDURAL HISTORY

The facts, taken largely from the Court of Appeal's opinion, are not in dispute. Susanne Ball sued Sprint Spectrum L.P. (Sprint) on May 27, 2004, on behalf of the general public, for violating the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). Following the enactment of Proposition 64, the complaint was amended; Ball, who was not a Sprint customer, withdrew from the litigation, and Pamela Meyer and Timothy Phillips were substituted as plaintiffs.

After three more amendments of the complaint, two in response to the trial court's sustaining a demurrer with leave to amend, plaintiffs filed a fourth amended complaint, which alleged three causes of action: violation of the UCL; violation of the CLRA; and for declaratory relief. The basis for each cause of action was plaintiffs' claim that certain provisions of Sprint's customer service agreement were unconscionable and illegal because they: (1) required that the parties submit disputes under the customer service agreement to binding arbitration pursuant to the rules of Judicial Arbitration and Mediation Services, National Arbitration Forum, or an organization chosen by the parties; (2) waived the right to resolve disputes through a jury trial; (3) waived class action in arbitration; (4) failed to provide for discovery before arbitration; (5) split the cost of arbitration; (6) disclaimed warranties and limited liability; (7) permitted Sprint to unilaterally change the terms of

the customer service agreement; (8) imposed a 60-day limitation period for initiating billing disputes; and (9) imposed a $150 early termination fee.

Sprint demurred to the fourth amended complaint, arguing plaintiffs lacked standing to assert any of the alleged causes of action. The trial court sustained the demurrer without leave to amend. It concluded that "[p]laintiffs have not shown they were personally damaged or that the allegedly unconscionable or illegal provisions have been enforced against them." Plaintiffs did not request leave to amend from the trial court.

The Court of Appeal affirmed the trial court, holding that (1) plaintiffs could not demonstrate an "injury in fact," which is a prerequisite to asserting a claim under the UCL; (2) without any showing of damage, plaintiffs had no standing to sue under the CLRA; and (3) plaintiffs had alleged no actual controversy between them and Sprint, and that therefore declaratory relief was not available. Plaintiffs sought review in this court of the second and third issues only, and we granted review.

## II. Discussion

### A. Does the CLRA Require a Showing of Damages in Order to Demonstrate Standing

The CLRA makes unlawful, in Civil Code section 1770, sub-division (a) (all undesignated statutory cites are to the Civil Code), various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." These include, most pertinently to the present case, "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.*, subd. (a)(14)) and "[i]nserting an unconscionable provision in the contract" (*id.*, subd. (a)(19)). Plaintiffs contend that with various unconscionable provisions in the arbitration agreement and various other unlawful restrictions on remedies and penalties, Sprint violated the CLRA and may be enjoined from including such provisions in its customer service agreements.

Plaintiffs do not allege that there was any dispute between them and Sprint that necessitated resort to arbitration or to the other remedial provisions. Rather, theirs can be characterized as a preemptive lawsuit to strike these terms should any dispute arise. The question is whether the CLRA gives standing to permit such preemptive suits.

This question is one of statutory interpretation. When a court attempts to discern the meaning of a statute, "it is well settled that we must look first

to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.' [Citation.] If the statutory language is clear and unambiguous our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

Sprint contends that plaintiffs do not have standing, relying on the plain language of section 1780, subdivision (a) (hereafter section 1780(a)), which states: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: [¶] (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000). [¶] (2) An order enjoining the methods, acts, or practices. [¶] (3) Restitution of property. [¶] (4) Punitive damages. [¶] (5) Any other relief that the court deems proper." Sprint contends plaintiffs have not "suffer[ed] any damage as a result of" the allegedly unlawful practices.

Plaintiffs make essentially two counterarguments. First, they contend that they have experienced some "damage" within the meaning of that statute. Second, they contend that section 1780(a) is in fact not a statute about standing and that there is no "damage" requirement for bringing a CLRA suit.

As to the first argument, plaintiffs contend that the phrase "any damage" is not synonymous with "actual damages," which generally refers to pecuniary damages. The language of section 1780(a) indicates that plaintiffs are correct. If "any damage" and "actual damages" were synonymous, then it seems likely only the latter phrase would have been used in the first part of subdivision (a). The juxtaposition of the two phrases so close together indicates that the phrases have different meanings. Moreover, the breadth of the phrase "any damage" indicates a category that includes, but is greater than, "actual damages," i.e., those who are eligible for the remedy of "actual damages" are a subset of those who have suffered "any damage." Sprint does not dispute this point. It concedes that "any damage" may encompass harms other than pecuniary damages, such as certain types of transaction costs and opportunity costs.[1]

---

[1] Transaction costs are costs associated with the formation and maintenance of economic relationships, including the costs of enforcing contracts. (See Swygert & Yanes, *A Primer on the Coase Theorem: Making Law in a World of Zero Transaction Costs* (Fall–Winter 1998) 11 DePaul Bus. L.J., 1, 20.) An opportunity cost is " 'the benefit foregone by employing a resource in a way that' prevents it from being put to another use." (*Id.* at p. 18.) We do not

Plaintiffs then argue that the very presence of unconscionable terms within a consumer contract, in violation of section 1770, subdivision (a)(14) and (19), constitutes a form of damage within the meaning of section 1780(a). Sprint disagrees, arguing that in addition to the fact that an agreement contains allegedly unconscionable terms,[2] a consumer must experience some damage, some type of increased costs, as a result of the unconscionable terms in order to have standing pursuant to section 1780(a).

■ We conclude based on the language of the statute that Sprint has the better position. Section 1780(a) provides that: "Any consumer who suffers any damage *as a result of* the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action" under the CLRA (italics added). The statute speaks plainly about the use of an unlawful practice causing or resulting in some sort of damage. Thus, the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result. If the Legislature had intended to equate "any damage" with being subject to an unlawful practice by itself, it presumably would have omitted the causal link between "any damage" and the unlawful practice, and instead would have provided something like "any consumer who is subject to a method, act, or practice declared to be unlawful by Section 1770 may bring an action" under the CLRA.

Plaintiffs cite in support *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 [200 Cal.Rptr. 38, 676 P.2d 1060] (*Kagan*). In *Kagan*, the plaintiff chose a financial institution, Gibraltar Savings and Loan Association (Gibraltar), that had represented it would charge no management fees for an individual retirement account (IRA). After opening the account, Gibraltar informed the plaintiff that it would be charging a $7.50 fee for administering the account. Initial letters of protest against the fee were unavailing. The plaintiff hired counsel, who advised Gibraltar that it had violated the CLRA, and demanded that Gibraltar not deduct the fee, that it cease its misleading advertising practices, and that it rectify the charging of this fee to other similarly situated bank customers. Gibraltar responded by complying with some of the plaintiff's demands, but did not attempt to identify and reimburse all customers who had been charged the fee. The plaintiff filed a class action lawsuit on behalf of herself and those similarly situated who had been charged fees by Gibraltar. (35 Cal.3d at pp. 587–589.)

Gibraltar, in opposing the class action lawsuit, contended that because the administrative fee was not actually deducted from the plaintiff's account, the

---

mean to imply in the above paragraph that transaction costs and opportunity costs can never, categorically, provide the basis for a claim for actual damages.

[2] Sprint also contends that the terms in question are not unconscionable, a question we do not address in view of the narrow issue before us.

plaintiff had not suffered "any damage" within the meaning of section 1780(a) and therefore had no standing to sue. The court acknowledged that, had the plaintiff's demand letter been made solely on her own behalf alone, Gibraltar's actions in rectifying its deceptive practice would have meant that no CLRA action would lie, because section 1782, subdivision (b) provides that no CLRA action for damages can be maintained when the unlawful practice has been timely corrected. (*Kagan, supra*, 35 Cal.3d at p. 591.) But the court construed the plaintiff's demand letter as being made on behalf of a class of similarly situated consumers, and therefore falling under the rubric of section 1782, subdivision (c). That section requires that in order to defeat a class action lawsuit against a class injured by a practice proscribed under the CLRA, the party alleged to have committed the unlawful practice must adequately notify the members of the class and provide an opportunity for an appropriate remedy for the defective goods or services. Because Gibraltar did not comply with these strictures, the court found the individual remedy offered the plaintiff inadequate to preclude a class action. (*Kagan, supra*, 35 Cal.3d at p. 592.)

In so holding, the *Kagan* court made clear that the CLRA was specifically designed "to preclude such 'picking off' of prospective class action plaintiffs: 'The most important point in connection with the settlement of class actions is that settlement with the named plaintiffs will not preclude them from further prosecuting the action on behalf of the remaining members of the class. Note that section 1782(c) precludes the further maintenance of the action only if *all* the described conditions are shown to exist. Those conditions require settlement with all reasonably identifiable members of the class.' " (*Kagan, supra*, 35 Cal.3d at p. 593.)

Having so concluded, the court went further, stating: "We thus reject Gibraltar's effort to equate pecuniary loss with the standing requirement that a consumer 'suffer[] any damage.' As it is unlawful to engage in any of the deceptive business practices enumerated in section 1770, consumers have a corresponding legal right not to be subjected thereto. Accordingly, we interpret broadly the requirement of section 1780 that a consumer 'suffer[] any damage' to include the infringement of any legal right as defined by section 1770." (*Kagan, supra*, 35 Cal.3d at pp. 592–593.)

Although the *Kagan* court equated the infringement of any legal right under section 1770 with "suffering any damage" pursuant to section 1780(a), its holding was ultimately based not on an analysis of that language, but on the provisions of section 1782, subdivision (c), that once a person has been the victim of a proscribed practice under the CLRA and makes a demand on behalf of a class, remedying the plaintiff's individual complaint does not disqualify her as class representative. Moreover, in *Kagan* it was indisputable

that the defendant made clear its intent to deduct an allegedly fraudulent administrative fee from her account, and that the plaintiff was able to avoid the fee only by expending time and money threatening Gibraltar with a lawsuit. As discussed, the expenditure of such transaction costs to avoid the consequences of a deceptive practice falls within the broad meaning of suffering "any damage as a result of the use or employment" of an unlawful practice, whether or not those transaction costs are cognizable as "actual damages." The plaintiff in *Kagan* may have also incurred opportunity costs, because Gibraltar's alleged misrepresentations may have diverted the plaintiff from finding a financial institution that did not charge administrative fees.

 In the present case, however, because Sprint had not sought to enforce any unconscionable term against plaintiffs, Sprint has not actually imposed additional transaction costs on plaintiffs. Although the allegedly unconscionable terms may at some future time require plaintiffs to expend greater costs and legal fees should a dispute arise that requires arbitration or resort to other remedial provisions, it would contort the statutory language to conclude that the preemptive expenditure of fees for this litigation means that Sprint's alleged unlawful practices had caused "damage" at the time the lawsuit was filed. If we were to so conclude, then the mere employment of an unlawful practice would be sufficient to authorize a CLRA suit, a meaning which, as discussed above, the language of the statute does not support. We decline to extend *Kagan* to situations in which an allegedly unlawful practice under the CLRA has not resulted in some kind of tangible increased cost or burden to the consumer.[3]

Plaintiffs' second argument is that section 1780(a) is not a standing statute at all, and that even though a consumer who suffers "any damage" may obtain various remedies, the statute does not provide explicitly or implicitly that one who does not suffer "any damage" is precluded from obtaining injunctive relief. Plaintiffs point to section 1782 in support of their position. Subdivision (a) provides: "Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: [¶] (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. [¶] (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in

---

[3] We therefore disapprove of *Kagan*'s dictum that "we interpret broadly the requirement of section 1780 that a consumer 'suffer[] any damage' to include the infringement of any legal right as defined by section 1770." (*Kagan, supra,* 35 Cal.3d at p. 593.)

Plaintiffs also cite *Ting v. AT&T* (2002) 319 F.3d 1126, 1147–1152, in which the Ninth Circuit affirmed the district court's granting injunctive relief under the CLRA, invalidating on unconscionability grounds portions of an arbitration clause in a customer service agreement. *Ting* does not discuss the CLRA standing issue and therefore does not support plaintiffs' position.

violation of Section 1770." Subdivision (b), as noted provides no CLRA action for damages may be maintained if there is appropriate correction within 30 days after receipt of notice. Subdivision (d), provides in pertinent part: "An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages."

■ Thus, section 1782, subdivision (d) contemplates the filing of a CLRA action for injunctive relief alone, and such actions are not subject to the requirements of subdivisions (a) and (b) of notice and allowance for voluntary correction. But subdivision (d) does not alter the basic requirements of section 1780(a) that the consumer bringing the action must have suffered "damage" as the result of unlawful practices. Although subdivision (d) does speak in terms of "[a]n action for injunctive relief brought under the specific provisions of section 1770," section 1770 does not by itself authorize injunctive relief. Section 1780 is the only section of the CLRA that sets forth the available remedies, including injunctive relief.

■ An additional problem with locating the authority to file injunctive relief under the CLRA outside of section 1780 has to do with the availability of attorney fees for prevailing plaintiffs. As we have stated, "the availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*).) The attorney fee provision is to be found in section 1780, subdivision (e), which states that the court "shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed *pursuant to this section*." (Italics added.) Thus, by its terms, attorney fees are not available under the CLRA for actions that do not meet the requirements of section 1780, including the requirement that the consumer suffer some "damage" as the result of specified unlawful practices. We do not believe the Legislature intended to authorize a CLRA action in which the critical attorney fee remedy would be lacking.

■ Plaintiffs also point to the CLRA statute of limitations, section 1783, which states: "Any action brought under the specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice." Plaintiffs contend that this statute demonstrates that "a CLRA claim is pegged to the specific provisions of section 1770" and that therefore "the prerequisite to bringing a CLRA action is exposure to an act . . . declared unlawful in section 1770." We do

not read the statute of limitations as altering the "damage" requirement of section 1780(a). Moreover, the statute of limitations set forth in section 1783 has been interpreted to run " 'from the time a reasonable person would have discovered the basis for a claim.' " (*Chamberlan v. Ford Motor Co.* (N.D.Cal. 2005) 369 F.Supp.2d 1138, 1148.) Plaintiffs' interpretation of section 1783 would have the perverse effect of requiring consumers whose contracts harbor unconscionable remedies to sue within three years after entering such a contract, regardless of whether these remedies have been used against them. It is doubtful this anticonsumer result is what the Legislature intended in enacting section 1783.[4]

■ Plaintiffs also cite to section 1760, which states that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." A mandate to construe a statute liberally in light of its underlying remedial purpose does not mean that courts can impose on the statute a construction not reasonably supported by the statutory language. (See *Williams v. MacFrugal's Bargains - Close-outs, Inc.* (1998) 67 Cal.App.4th 479, 482 [79 Cal.Rptr.2d 98].) Here, as discussed, plaintiffs do not advance a reasonable construction of the CLRA that would permit a lawsuit based on that statute when a plaintiff has not suffered damage as a result of the practices proscribed by section 1770.

Plaintiffs contend that requiring even a low damage threshold would allow corporations that deal with consumers to load their contracts with unconscionable remedial terms that would chill the efforts of consumers seeking to enforce their legal rights. Those concerns, while not unfounded, are overstated. The CLRA, in its injunctive relief provisions, allows plaintiffs to enjoin a corporation's deceptive or unlawful business practices throughout the state on behalf of the general public. (*Broughton, supra,* 21 Cal.4th at pp. 1080–1081.) Thus, when, for example, an arbitration clause unconscionable on its face is asserted against a consumer, that consumer would not only be able to resist its enforcement in defending against a motion to compel arbitration, but would also be able to enjoin the enforcement of that clause statewide.

Nor, as the damages threshold was interpreted in *Kagan* and in the present case, would a corporation initially intent on engaging in an unlawful practice against a consumer, such as enforcing an unconscionable term, be able to avoid an injunction by remedying that consumer's individual

---

[4] We note that the parties do not cite the legislative history of the CLRA in support of their respective positions, and our own research did not disclose any history useful for resolving the present issue.

grievance, thereby "picking off" troublesome plaintiffs. First, as discussed above, a consumer who has had to expend transaction costs in order to avoid the unconscionable term has suffered "damage" within the meaning of section 1780(a) and therefore has standing to sue. Second, section 1782, subdivision (d) makes clear that remedying an individual consumer grievance, while precluding CLRA individual damage lawsuits under certain circumstances, does not prevent consumers from suing to enjoin unlawful practices on the public's behalf. Third, as discussed above and in *Kagan*, if the action is filed as a class action lawsuit, section 1782, subdivision (c) makes clear that individual settlement will not undermine a plaintiff's status as a legitimate class representative.

It is evident that any rule that would expand the ability of individuals to bring lawsuits has costs as well as benefits. (See *Californians for Disability Rights v. Mervyn's LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207] [discussing ballot arguments in favor of passage of Prop. 64 which cite litigation abuses due to liberal standing rules under the UCL].) It is also apparent that the Legislature, in weighing these costs and benefits in drafting the CLRA, set a low but nonetheless palpable threshold of damage, and did not want the costs of a lawsuit to be incurred when no damage could yet be demonstrated. We therefore conclude that the Court of Appeal was correct in holding that plaintiffs' complaint does not sufficiently allege a cause of action for injunctive relief under the CLRA.

### B. *Is Declaratory Relief Available Pursuant to Code of Civil Procedure Section 1060*

Plaintiffs contend that the trial court erred in granting a demurrer with respect to their declaratory relief action seeking a court judgment declaring the arbitration and other remedial provisions in question unconscionable and unlawful. As explained below, we conclude the court did not err.

The pertinent statute, Code of Civil Procedure section 1060 provides: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be

claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

Code of Civil Procedure section 1060, which provides that a court *"may* make a binding declaration" (italics added) of a litigant's rights or duties, must be read together with section 1061, which states: "The court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061.) "The trial court's decision to entertain an action for declaratory relief is reviewable for abuse of discretion. [Citation.]" (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433 [121 Cal.Rptr.2d 844, 49 P.3d 194].) This discretion is not boundless: "Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction . . . ." (*Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217].)

■ " 'The purpose of a declaratory judgment is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." ' (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 729 [146 P.2d 673].) 'Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation [citation].' (*Bess v. Park* (1955) 132 Cal.App.2d 49, 52 [281 P.2d 556].)" (*In re Claudia E.* (2008) 163 Cal.App.4th 627, 633 [77 Cal.Rptr.3d 722].) " 'One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.' " (*American Tel. & Tel. Co. v. California Bank* (1943) 59 Cal.App.2d 46, 55 [138 P.2d 49].)

■ As noted, Code of Civil Procedure section 1060 does not require a breach of contract in order to obtain declaratory relief, only an "actual controversy." Declaratory relief pursuant to this section has frequently been used as a means of settling controversies between parties to a contract regarding the nature of their contractual rights and obligations. (See, e.g., *Columbia Pictures Corp. v. DeToth, supra,* 26 Cal.2d at p. 760; *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673]; *Gunn v. Giraudo* (1941) 48 Cal.App.2d 622 [120 P.2d 177]; *Tolle v. Struve* (1932) 124

Cal.App. 263, 269 [12 P.2d 61].) In the present case, there is no doubt a present controversy exists regarding whether certain terms of a contract to which plaintiffs and defendant are parties are unconscionable and unenforceable.

It is true that whereas the cases cited above involved situations in which substantive contractual rights were in dispute, in the present case, the controversy is primarily over the enforceability of certain *remedies* should a future dispute about substantive rights arise. But it is not necessarily true that this distinction is critical in all cases. We have recognized that contractual provisions that severely restrict ordinarily available remedies may undermine substantive rights. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076–1077 [130 Cal.Rptr.2d 892, 63 P.3d 979] [arbitrations of unwaivable rights must possess certain minimal safeguards so that these rights may be vindicated].) Courts have granted declaratory relief for parties aggrieved by contracts with unlawfully restrictive remedies. In *Baker Pacific Corp. v. Suttles* (1990) 220 Cal.App.3d 1148 [269 Cal.Rptr. 709] (*Suttles*), a release from future liability that asbestos removal employees were required to sign as a condition of employment, challenged by an employee who had refused to sign the release, was declared void.

■ Nonetheless, as discussed above, declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation. There may indeed be cases in which the settlement of questions of the validity of contractual remedies has practical consequences, such as when a party's decision to enter into a contract reasonably turns on the answer to these questions (see *Suttles, supra,* 220 Cal.App.3d 1148), or when a party alleges with sufficient particularity that the continuation of a contractual relationship plausibly hinges on such answers. But when resolution of the controversy over future remedies would have little practical effect in terms of altering parties' behavior, courts have considerable discretion, pursuant to Code of Civil Procedure section 1061, to deny declaratory relief because it "is not necessary or proper at the time under all the circumstances."

In the present case, plaintiffs have not with any particularity alleged that the resolution of the declaratory relief action concerning contractual remedies would, at this point, have any practical consequences. No dispute has arisen that would cause these remedial provisions to come into play, and plaintiffs do not allege that the continuation of the contractual relationship depends on the resolution of these questions. We therefore conclude the trial court did not abuse its discretion in sustaining a demurrer to plaintiffs' declaratory relief action.

## III. Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

Appellants' petition for a rehearing was denied April 1, 2009.