Filed 3/2/15  Boling v. DTG Operations CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK BOLING, | |
| Plaintiff and Appellant, | G049106 |
| v. | (Super. Ct. No. 30-2012-00540971) |
| DTG OPERATIONS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

Law Offices of James E. Mahfood and James E. Mahfood; Dale M. Fiola for Plaintiff and Appellant.

Perkins Coie, Michael B. Garfinkle and Joren S. Bass, for Defendant and Respondent.

## INTRODUCTION

Mark Boling appeals from the judgment in his action against respondent DTG Operations, Inc., which operates Dollar Rent A Car (Dollar). Boling sued Dollar under California's Unfair Competition Law (UCL) and the Consumer Legal Remedies Act (CLRA), claiming he was overcharged and misled as to a tax he had to pay on a car he rented at the Phoenix, Arizona, airport in December 2011. The trial court granted Dollar's motion for summary judgment and entered judgment in its favor against Boling.

We affirm. Boling did not present evidence to create a triable issue of fact as to his damages under either the UCL or the CLRA, after Dollar made a prima facie case that he had not been damaged. Without evidence of damages, Boling does not have standing to sue under either statute. The court correctly granted summary judgment in Dollar's favor.

## FACTS

In December 2011, Boling went onto the CarRentals.com website to check the price of rental cars at the Phoenix airport. After viewing his options, he went to the Dollar website to reserve a mid-sized car for 24 hours.[1] The estimated total price quoted to him on the website included an amount for a tax on car rentals imposed by Maricopa County, where the Phoenix airport is located. The website identified the county tax amount as $0.61. The amount Dollar actually charged was $2.50.[2]

---

[1] Boling stated he traveled to Phoenix to attend his sister's graduation.

[2] The tax is 3.25 percent of the gross proceeds or gross income from the business or $2.50 on each lease or rental, whichever is more, levied each month. (Arizona Revised Statutes § 5-839.) Dollar interprets the statute to require an assessment of $2.50 on each rental for which 3.25 percent of the rental amount is lower than $2.50. In other words, $2.50 is the minimum assessment on each car. Dollar's website, however, calculated the assessment at 3.25 percent regardless of the rental amount. Accordingly, the tax on Boling's low-priced rental as shown on the website was $1.89 lower than the tax that would have been charged at the airport. The discrepancy has since been fixed.

The tax is imposed on the rental car company, not the consumer. (Arizona Revised Statutes § 5-839.) The individual rental company decides whether it will pass the tax along to its customers. (See *Karbal v. Arizona Department of Revenue* (2007) 215 Ariz. 114, 116-117.)

Boling arrived at the Dollar rental booth in Phoenix two-and-a-half hours before the arrival time stated on his reservation. As a result, his paperwork had to be redone, because he anticipated keeping the car for more than 24 hours. The new paperwork charged him over $17 more for the rental in total, including nearly double the amount of fees and taxes, and correctly reflected the $2.50 county tax charge. Boling signed the new agreement as he exited the rental car parking lot.[3]

As it happened, Boling returned the car within 24 hours, so he persuaded the Dollar employee at the check-in station to apply the 24-hour rate. The $2.50 county tax assessment was one of the items on the final receipt. Boling's credit card was charged upon his returning the car.

Boling sued Dollar on January 30, 2012, for violations of the UCL and the CLRA, alleging that the initial representation on the Dollar website about the amount of the Maricopa County tax violated both statutes.[4]

Dollar moved for summary judgment on several grounds.[5] The trial court's analysis was that the original deal was essentially canceled when Boling arrived early to pick up his car and thus apparently could not return it within 24 hours to get the low advertised rate. He agreed to pay more money so that he could return the car later. The tax Dollar intended to charge him was correctly shown on the new paperwork. When he managed to return the car within 24 hours after all, Dollar charged him the prior rate, but with the tax correctly shown.

---

[3] The statement of facts in Boling's opening brief omits a discussion of the early arrival and its consequences.

[4] Boling's celeritous filing of a lawsuit against Dollar can perhaps be explained by his nearly 10-year history as either a plaintiff or plaintiff's counsel of record in approximately 30 consumer lawsuits.

[5] Dollar also demurred on the ground that the UCL and the CLRA do not have extra-territorial effect. The trial court overruled the demurrer.

The court properly overruled the demurrer. If Boling, a California resident, had suffered damage or lost money or property as a result of making a Dollar car rental reservation in California, the UCL and CLRA could apply. (See *RLH Industries, Inc. v. SBC Communications, Inc.* (2005) 133 Cal.App.4th 1277, 1288-1293.) As we shall see, however, he could not make that showing.

## DISCUSSION

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

"The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation] – that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citation] – and that the 'moving party is entitled to a judgment as a matter of law' [Citation]. The moving party must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.] Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.] An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. [Citation.] In ruling on the motion, the court must 'consider all of the evidence' and 'all'

4

of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.)

## I.        The UCL Claim

Business and Professions Code section 17203 provides in pertinent part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Business and Professions Code section 17204 provides in pertinent part, "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by . . . a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." The requirement of injury in fact and lost money or property for private plaintiffs was added by initiative in 2004. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228.)

A private plaintiff must suffer an "economic injury" as a result of the act of unfair competition in order to have standing to sue. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323 (*Kwikset*); *Hall v. Time, Inc.* (2008) 158 Cal.App.4th 847,

854-855, 857 (*Hall*).)  An economic injury can take one of several forms.  "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Kwikset, supra,* 51 Cal.4th at p. 323; see also *Hall, supra,* 158 Cal.App.4th at pp. 854-855.)  A plaintiff who cannot make this showing, however, lacks standing to sue under the UCL, even if the defendant did in fact engage in some "unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.)

The question before us, then, is whether Boling suffered any actual injury or lost money or property as a result of renting a car from Dollar.  What the Dollar website showed or did not show before Boling got to the Phoenix airport is irrelevant, because after arriving early, he wanted to change the deal materially.  He sought to rent a car for more than 24 hours, and Dollar agreed to let him do so, provided he agreed to pay more money.  The new rental price was considerably more than the price on the website, because of the extended rental period.  The county tax quoted to him for the new deal was the tax Dollar actually intended to charge him, and he agreed to pay it, as well as the other increased charges.

Upon receiving the new charges, including the increases for the base rental and the fees and taxes, Boling was not obligated to accept the car on these terms.  He could have refused the terms outright, or he could have done some comparison shopping on the spot, using the new Dollar offer as the basis of comparison.  He was at an airport location with 12 rental car company desks in one building.  He had received accurate information about the price of his potential Dollar rental, including the total amount of

6

taxes, before he had to sign any agreement with Dollar. He had arrived early. He was well positioned to see whether he could get a better deal from another company.

The estimated figure quoted to Boling on the Dollar website did not cause him to lose money or property; it was no longer applicable when he actually entered into a car rental agreement with Dollar. (See *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1350-1351 [plaintiff failed to establish causal link between non-disclosure and loss of money]; *Hall, supra,* 158 Cal.App.4th at p. 857 [unfair conduct did not cause plaintiff to send money to publisher].) Boling does not dispute that the figures on the receipt he actually signed – and which reflected his actual agreement with Dollar – were correct at the time he entered into the agreement. And the amount charged to his credit card – after convincing Dollar to reduce the price when he brought the car back before time – included and disclosed the amount of the charge for the county tax Dollar actually assessed on the transaction. The trial court properly granted Dollar's summary judgment on this issue.

## II. The CRLA Claim

The CLRA prohibits a list of "unfair methods of competition and unfair or deceptive acts or practices" used in the sale or lease of consumer goods or services. (Civ. Code, § 1770, subd. (a).) A consumer who has "suffer[ed] any damage" as a result of the prohibited acts or practices can bring an action on his own behalf and also on behalf of "other consumers similarly situated" who have also been damaged. (Civ. Code, §§ 1780, subd. (a); 1781, subd. (a).) Thus, "[r]elief under the CLRA is specifically limited to those who suffer damage . . . ." (*Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 754.)

Boling sued Dollar under Civil Code section 1770, subdivisions (a)(5) and (a)(9), which prohibit, respectively, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ," and "[a]dvertising goods or services with intent not to sell them as

7

advertised." Assuming that a miscalculated tax amount is a representation about a car rental's sponsorship, approval, characteristic, ingredients, use, benefit, or quantity; and assuming that displaying a tax amount on a website constitutes "advertising"; and assuming Dollar deliberately miscalculated the tax it would charge for renting the car to Boling, he still has to show that he "suffer[ed] any damages as a result" of the prohibited act. (Civ. Code, § 1780, subd. (a); see *Meyer v. Sprint Spectrum, L.P.* (2009) 45 Cal.4th 634, 643 [unlawful practice must "result[] in some kind of tangible increased cost or burden to consumer"]; *Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1556 [denial of ability to "shop around" not sufficient to state CLRA cause of action].)

As with his UCL claim, Boling cannot make the necessary showing. He did not take Dollar up on the offer presented to him on the website. He did not pay Dollar anything as a result of that offer. There is also no support for a "bait-and-switch" argument. The "switch" was initiated by Boling, not Dollar. He entered into a new deal at his own request – for more money – because he wanted to keep the car for a longer time. He was accurately informed of the amount of the charges when he entered into the new deal. When he brought the car back, the deal was changed yet again, as he persuaded the Dollar employee at the checkout booth to lower the price after he returned the car early. Once again the charges were accurately displayed to him. We are at a loss to fault Dollar's conduct in this regard. It seems quite reasonable to us.

Unlike UCL damages, CLRA damages are not restricted to lost money or property. (See *Meyer v. Sprint Spectrum, L.P., supra*, 45 Cal.4th at p. 640 [CLRA damages may encompass harms other than pecuniary damages].) Boling, however, did not identify any damage other than being overcharged for the county tax as a result of the

miscalculation on the Dollar website. He did not, for example, state that he would have foregone his trip to Phoenix and his attendance at his sister's graduation had he known he would have to pay an additional $1.89 in taxes. He did not present evidence of other comparable cars he could have rented for less money.

Boling appears to be operating under the assumption that the original reservation from the website was held in suspended animation while he agreed to pay Dollar for a longer rental period, then signed for and drove away in the car under the terms of the new agreement. According to Boling's theory, the suspended reservation magically came back to life when he returned the car earlier than expected.

That is not how it works. The reservation was Dollar's original offer, but Boling did not accept it. That is, he did not obligate himself to pay Dollar per this offer or even to appear to pick up the car.[6] (Cf. *Donovan v. Rrl Corp.* (2001) 26 Cal.4th 261, 276 [auto dealer's offer to sell car accepted when consumer tendered advertised price].) When he got to Phoenix, he made a counteroffer – same car, longer rental period. Dollar in turn made its counteroffer – same car, longer rental period, more money. Boling accepted Dollar's counteroffer, signing the gate receipt to indicate his acceptance of that bargain, not the website offer. When he returned the car early, Boling negotiated either a new deal or a modification of the existing deal, however one wants to look at it. What he did not do was revive Dollar's previous offer, which he had never accepted and which, by making a counteroffer, he had rejected. (See *Apablasa v. Merritt & Co.* (1959) 176 Cal.App.2d 719, 726 ["[T]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract [citations] and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer."]; Civ. Code, § 1588 [qualified acceptance is new proposal].)

---

[6] Dollar did not take Boling's credit card information for the car reservation made on the website.

9

Boling was unable to present evidence of a triable issue of fact that he had suffered any damage as a result of the representation of the county tax on the Dollar website. He paid Dollar pursuant to the deal he made at the Phoenix airport, not the one Dollar proposed on the website. The charges he actually paid were accurately disclosed to him at the time. Dollar made no misrepresentations with respect to these charges that caused Boling any damage. The court properly granted summary judgment on Boling's CLRA cause of action.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.