Filed 5/19/14  Kulakowski v. Verimatrix, CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT KULAKOWSKI, | D063536 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00088577-CU-MC-CTL) |
| VERIMATRIX, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

herronlaw and Matthew V. Herron for Plaintiff and Appellant.

Kyle Ludwig Harris and John S. Kyle for Defendant and Respondent.

Robert Kulakowski brought a declaratory relief action against his former employer, Verimatrix, Inc., seeking a declaration that Verimatrix has no interest in one of Kulakowski's pending patent applications.  After a 13-day trial, the court found declaratory relief was not necessary or proper because the patent application was likely to be modified and a declaration would not resolve the parties' disputes.  (Code Civ. Proc.,

§ 1061.)[1]  The court alternatively found that "even if" declaratory relief was appropriate, it would not grant declaratory relief in Kulakowski's favor because Verimatrix proved its unclean hands defense, including that Kulakowski breached his fiduciary duty to Verimatrix and breached his noncompete agreement while he was still employed by the company.

On appeal, Kulakowski does not challenge the court's conclusion that declaratory relief was not necessary or proper on the facts before it.  (§ 1061.)  He contends only that the court erred in its ruling on Verimatrix's unclean hands defense because:  (1) the court had no authority to reach this issue; and (2) the court's findings were legally inconsistent with the parties' contracts.  We reject Kulakowski's contentions and affirm.

FACTUAL AND PROCEDURAL SUMMARY

We summarize the facts in the light most favorable to the trial court's decision, resolving all conflicts and indulging all reasonable inferences to support the court's factual conclusions.  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)

In 2000, Kulakowski (a talented inventor) and another individual founded Verimatrix, a technology company.  Within the next several years, Verimatrix developed and sold encryption security systems that would prevent "hackers" from unlawfully gaining access to video content.  This product is known as a "Conditional Access System" or CAS.

---

[1]  All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

In 2002, Kulakowski became Verimatrix's chief technology officer (CTO), responsible for product development and engineering. In 2004, Kulakowski signed an agreement with Verimatrix pertaining to Verimatrix's rights to its proprietary information (2004 Agreement). Under sections 3(c) and 3(d) of this agreement, Kulakowski was required to disclose in writing all "Inventions" as defined in the agreement, and all such Inventions were the "sole property of the Company to the maximum extent permitted by law." The 2004 Agreement also contained a provision (section 3(j)) stating that Kulakowski could not compete with the company "during my employment with or service to the Company."

Four years later, in 2008, Verimatrix was working on security technology pertaining to " 'day-date' " movie releases, which refers to releasing a movie in theatres while simultaneously making it available for home viewing.

The next year, in August 2009, Kulakowski notified Verimatrix he wished to leave the company. He indicated he wanted to pursue a new, *noncompetitive* venture. Verimatrix responded by requesting that Kulakowski remain as CTO until a suitable replacement could be found and to assist the company in defending against a pending patent infringement suit. Kulakowski agreed to this arrangement. The parties also agreed to amend Kulakowski's 2004 Agreement to " 'carve out the specific field of use for Mr. Kulakowski's new project.' " The parties agreed that Kulakowski would retain the CTO title through about March 2010, and in the interim Kulakowski would work half time for Verimatrix and half time for Kulakowski's new (noncompetitive) venture.

3

As a result of these discussions, on September 10, 2009, Kulakowski and Verimatrix signed a document (the 2009 Amendment) that modified portions of the 2004 Agreement. The 2009 Amendment permitted Kulakowski to retain ownership of certain inventions resulting from his own subsequent work under certain circumstances: "For the avoidance of doubt, nothing in this Section 3(c) shall require me to disclose Inventions if conceived, reduced to practice, or developed by me on my own time; without using the Company's equipment, supplies, facilities, or trade secret information; and which is not the result of work performed by me for the Company."

At about the same time that the parties signed the 2009 Amendment, Kulakowski began working with another entity, Channel Islands, on a project known as "Blu-Box" that relates to security for day-date release technology. This project was competitive with Verimatrix's line of business. By January 2010, Kulakowski's work on the Blu-Box project led him to conceive of the encryption security technology referred to as "Rescue CAS," that was a main subject of the declaratory relief action. Kulakowski did not tell Verimatrix about his work on the Blu-Box or Rescue CAS projects. Between September 2009 and May 2010, Kulakowski filed seven provisional patent applications related to Rescue CAS.

Kulakowski remained Verimatrix's CTO (working part-time) until March 8, 2010, and continued to hold himself out as CTO until March 18, 2010. During the next six months, Kulakowski continued to be paid as an employee of Verimatrix and receive employment benefits from Verimatrix.

4

In May 2010, Kulakowski (while still being paid as a Verimatrix employee) incorporated his own company, Secure TV, Inc. The next month, Kulakowski prepared an executive summary stating that this company was competing in the "CAS market" (the same market that was Verimatrix's business), that it had a paying customer, and that its system was being commercially deployed.

In August 2010, Verimatrix's chief executive officer contacted Kulakowski and asked him whether he was working on projects that were competitive with Verimatrix, including a " 'CAS System,' " and warned him that this would not be appropriate. Kulakowski denied that he was working on this type of project.

Kulakowski's last day of employment with Verimatrix was on September 30, 2010.

Three months later, in December 2010, Kulakowski filed a patent application (trial exhibit 63) under the Patent Cooperation Treaty. This patent application involved technology which Kulakowski referred to at trial as "Dynamic Obfuscation Processing" or "Rescue CAS."[2]

Three months later, in March 2011, Kulakowski filed a superior court complaint against Verimatrix, alleging a single cause of action for declaratory relief. Kulakowski alleged that after he signed the 2009 Amendment he invented "on his own time and with his own resources . . . certain novel means of encryption which he denominates as 'Rescue CAS' " and that Verimatrix was claiming "some right to [the] Rescue CAS

---

[2]    In June 2012, Kulakowski filed an amended version of this patent application with the United States Patent and Trademark Office.

5

invention."  Kulakowski sought a declaration that Verimatrix has no "right title or interest" in this invention.  Specifically, as later clarified at trial, Kulakowski requested the following declaration:  Under the terms of the 2004 Agreement and 2009 Amendment, Verimatrix "has no claim of ownership to Mr. Kulakowski's patent application marked as exhibit 63."  Kulakowski stated that this requested declaration would be "without prejudice to either party's rights, if any, under their respective patent applications before the patent authorities."

At trial, the parties called numerous witnesses and submitted more than 80 exhibits.  The trial took about 13 days.

Kulakowski's main theory was that he was entitled to a declaration that Verimatrix had no ownership rights in the Rescue CAS patent application because this technology was not related to, or derived from, any work while he was Verimatrix's CTO, and his employment actually ended in March 2010, rather than September 2010.  Kulakowski also argued that the 2009 Amendment precluded Verimatrix from claiming any ownership interest in his Rescue CAS work.  Kulakowski testified at length in support of these arguments, and presented several additional supporting witnesses and numerous documents.

In defense, Verimatrix challenged the court's subject matter jurisdiction, arguing patent law is subject to exclusive federal court jurisdiction.  Verimatrix also argued:  (1) the trial exhibit 63 patent application was likely to be modified and the underlying technology was not sufficiently definite to make any declaration of ownership practical or useful; and (2) Kulakowski was not entitled to a declaration on equitable grounds because

6

he had breached his fiduciary duty by taking opportunities for himself rather than offering them to Verimatrix and breached the parties' agreements by competing with Verimatrix while he was still employed by the company. Verimatrix asserted that the 2004 Agreement, as modified by the 2009 Amendment, did not, and was not intended to, permit Kulakowski to engage in competitive projects while working at Verimatrix, or take sole ownership of projects derived from his work at Verimatrix. Verimatrix called many witnesses (including an expert witness) and presented numerous documents in support of these arguments.

At the end of trial, the court orally ruled in favor of Verimatrix, stating: (1) "[d]eclaratory relief is not necessary or proper at this time under all the circumstances"; and alternatively (2) Verimatrix established its affirmative defense of unclean hands based on evidence establishing Kulakowski breached the parties' contracts and breached his fiduciary duties owed to the company while he was still employed. The court also found it had subject matter jurisdiction over the dispute, concluding that the issues involved primarily contract interpretation and did not require the resolution of federal patent-related questions.

The court later elaborated on these findings in a detailed statement of decision. Of relevance here, the court stated it was denying declaratory relief "on two *independent* grounds." (Italics added.) First, the court said declaratory relief "is not necessary or proper at this time under all the circumstances" because both parties have pending patent applications on similar subjects; the patent applications may change during their prosecution; and the declaration would likely spawn further dispute.

7

Second, the court said that "*even if declaratory relief were appropriate in the circumstances of this case*, and even if Mr. Kulakowski had established that the Court should issue declaratory relief as he requests (*which he has not*), the Court would not grant declaratory relief in Mr. Kulakowski's favor because Verimatrix has established its . . . affirmative defense of unclean hands; and that affirmative defense bars Mr. Kulakowski from receiving the declaratory relief he seeks." (Italics added.) The court stated this finding was based on its factual conclusions that Kulakowski breached his fiduciary duty owed to Verimatrix and breached his written contracts with Verimatrix while he remained employed by Verimatrix.

On the fiduciary duty finding, the court stated that before Kulakowski's employment ended on September 30, 2010, Kulakowski "knowingly breached his duty of loyalty" by: (1) failing to tell Verimatrix about the Blu-Box project or Rescue CAS, and taking the opportunity for himself; (2) creating the new CAS technologies and not informing Verimatrix of this work; (3) filing patent applications on his new technology in his own name without informing Verimatrix; (4) forming a new company (Secure TV) to compete with Verimatrix; (5) developing a product implementing his new technology that competes with Verimatrix; (6) soliciting investments in his new company; and (7) securing customers to purchase his competing product that incorporates his new technology. The court stated that "Although Mr. Kulakowski testified that he was not competing with Verimatrix while he was an officer and employee of the company, his testimony is not credible in light of the other evidence received at trial."

8

On the contract findings, the court stated that Kulakowski breached the 2004 Agreement, as modified by the 2009 Amendment, in various ways, including by: (1) working on the Blu-Box project and developing Rescue CAS while he was Verimatrix's CTO without disclosing this work; (2) directly competing with Verimatrix; and (3) assisting Channel Islands in preparing to compete with Verimatrix and using Channel Islands to sell the Secure TV CAS system. The court found that under the 2004 Agreement, Kulakowski had agreed to protect proprietary information and not to compete with Verimatrix, and that the 2009 Amendment had not lessened or modified these duties in relevant respects. The court further rejected Kulakowski's argument that the noncompete provision was an invalid restraint on trade, finding Business and Professions Code section 16600 does not apply to an existing employee.

Kulakowski objected to this statement of decision on several grounds, including that the court erred in reaching and ruling on the unclean hands defense. The court denied this objection. The court also denied Kulakowski's motion for a new trial on these same grounds.

DISCUSSION

I. *Court's Authority To Rule on Unclean Hands Defense in Declaratory Relief Action*

Kulakowski does not challenge the court's discretionary determination that the case was not appropriate for declaratory relief because the relevant patent application was likely to be modified. Kulakowski argues, however, that the court erred in "proceeding to the merits of the dispute" and entering judgment against him, rather than dismissing the

9

action.  Kulakowski contends the court's findings on the unclean hands defense "amounts to an impermissible advisory opinion."

Kulakowski's arguments are without merit.

Section 1060 provides that "in cases of actual controversy" a court "may make a binding declaration" of a litigant's rights or duties.  (See *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 (*Meyer*).)  Section 1061 states that a "court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."  (See *Meyer, supra*, 45 Cal.4th at p. 647.)

Reading these code sections together, a court may deny declaratory relief even if the plaintiff has satisfied the elements of declaratory relief under section 1060.  (*Meyer, supra*, 45 Cal.4th at p. 647; see 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 866, p. 282.)  "[D]eclaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation.  . . . [Thus] when resolution of the controversy over future remedies would have little practical effect in terms of altering parties' behavior, courts have considerable discretion, pursuant to . . . section 1061, to deny declaratory relief . . . .  (*Meyer, supra*, 45 Cal.4th at p. 648.)  " 'The trial court's decision to entertain an action for declaratory relief is reviewable for abuse of discretion.' . . . "  (*Id.* at p. 647.)

Further, courts have long recognized that once a court exercises its discretion under section 1061 and refuses to award declaratory relief on that basis, it should not dismiss the action, and instead should enter a judgment reflecting its section 1061

10

determination.  (See *International Assn. of Fire Fighters v. City of Palo Alto* (1963) 60 Cal.2d 295, 302 (*Fire Fighters*).)

In this case, the court made an express finding that declaratory relief was not "necessary or proper" under section 1061 because the patent application that was the subject of Kulakowski's declaratory relief request was likely to be modified and therefore any declaration of the parties' rights regarding this specific patent application would have little practical effect in resolving the parties' disputes, and could spawn more conflicts over the scope of the declaration as applied to future patent applications.

Kulakowski argues that once the court made this finding it had no *authority* to state alternative grounds for denying declaratory relief.  This argument is contrary to applicable law.  Once a court has personal and subject matter jurisdiction, it is empowered to "hear and determine the cause" and rule on all issues before it.  (*In re Griffin* (1967) 67 Cal.2d 343, 346; see *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087.)  Consistent with this authority, a court hearing a case in equity may consider and rule on all equitable defenses in deciding whether declaratory relief is necessary and proper.  (See *Moss v. Moss* (1942) 20 Cal.2d 640, 644; *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770-771.)  Moreover, it is well settled that a court may make findings in the alternative, even if any one finding by itself would support the judgment.  (See *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 646.)  By setting forth each of its alternative findings, the court promotes judicial economy and efficiency by permitting an appellate court to affirm a judgment on a proper independent ground even if another ground was legally erroneous.

11

Under these principles, the court could properly rule on each of Verimatrix's defenses to the declaratory relief claim in addition to denying the claim on section 1061 grounds. After the parties spent several weeks presenting the evidence in this highly technical case, the court had the equitable power to reach conclusions on each of the issues that the parties had placed before it, even if the court's rulings were merely alternative grounds for reaching the same conclusion that Kulakowski was not entitled to equitable relief. The unclean hands defense was a central issue at trial, and each party presented numerous documents and witnesses regarding this issue and the underlying breach of fiduciary duty and contractual issues. The court's findings on these issues were not mere advisory opinions based on hypothetical facts or speculative future events. Rather, the court resolved existing factual disputes on specific issues that had been presented to the court during trial. Kulakowski repeatedly discussed the need for resolution and clarity regarding the parties' disputes to allow the parties to go forward in their business dealings with third parties. A court's decision to resolve an issue presented to it that serves as an alternate basis for a judgment is not an impermissible advisory opinion.

In this respect this case is different from the decisions relied upon by Kulakowski: *Lockwood v. Sheppard, Mullin, Richter & Hampton* (2009) 173 Cal.App.4th 675 (*Lockwood*) and *Otay Land Company v. Royal Indemnity Company* (2008) 169 Cal.App.4th 556 (*Otay*).

In *Lockwood,* the plaintiff was an inventor who sued defendants for making misrepresentations to the federal patent office in seeking reexamination of the plaintiff's

12

patents. (*Lockwood, supra*, 173 Cal.App.4th at pp. 678-679.) The trial court granted the defendants' anti-SLAPP motion finding the claims were based on the defendants' petitioning activity and the plaintiff did not show a probability of prevailing. (*Id.* at pp. 680-681.) On appeal, the plaintiff raised (for the first time) the issue whether the trial court had *subject matter jurisdiction* over the lawsuit because federal courts have exclusive jurisdiction over patent claims. (*Id.* at pp. 681-682.) The Court of Appeal agreed that the claims were subject to exclusive federal jurisdiction because they would require the resolution of "substantial questions of patent law," and thus the trial court had no subject matter jurisdiction. (*Id.* at p. 687.)

The *Lockwood* defendants urged the court to nonetheless affirm the judgment in favor of the defendants, arguing the *outcome* would be the same—the plaintiff was barred from obtaining relief under either the anti-SLAPP ruling *or* the subject matter jurisdictional defect. (*Lockwood, supra*, 173 Cal.App.4th at p. 682.) The Court of Appeal rejected this argument and remanded for the trial court to vacate the judgment and instead *dismiss* the action for lack of subject matter jurisdiction. (*Id.* at pp. 682-683, 688.) The court reasoned that unlike a judgment on the merits that may have a res judicata effect, a dismissal for lack of jurisdiction does not bind the parties in later litigation. (*Id.* at p. 682.) Therefore when a court has *no jurisdiction* to rule on a matter, a court errs in issuing an unfavorable judgment on the merits and instead should dismiss the matter. (*Ibid.*)

Relying on this holding, Kulakowski argues the court here should have dismissed the action immediately after it concluded that declaratory relief was not appropriate and it

13

had no authority to render alternative findings. However, the trial court's decision that declaratory relief was not necessary or proper in this case was not equivalent to a determination that the court did not have subject matter jurisdiction. The absence of jurisdiction discussed in *Lockwood* concerned jurisdiction in the fundamental sense. " '*Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.*' [Citation.] *When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.*' [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660, italics added.)

A court that lacks personal or subject matter jurisdiction has no *power* to make alternate (or any) findings on the merits of the declaratory relief pleadings. (See *Lockwood, supra*, 173 Cal.App.4th at p. 682; see also *People v. American Contractors Indemnity Co., supra*, 33 Cal.4th at p. 660; *Miller-Leigh LLC v. Henson* (2007) 152 Cal.App.4th 1143, 1148-1149.) However, where as here, a court has fundamental jurisdiction, a court may enter judgment on the merits against the plaintiff on a declaratory relief claim. (See *Fire Fighters, supra*, 60 Cal.2d at p. 302.) If a court decides for practical reasons it is not necessary or proper to grant declaratory relief (§ 1061), there is no jurisdictional prohibition to the court making alternate findings based on the evidence before it. *Lockwood* is not applicable to this case.

Kulakowski's reliance on *Otay Land, supra*, 169 Cal.App.4th 556 is also misplaced. In that case, the plaintiff sued a third-party insurer, seeking declaratory relief

14

regarding the potential insurance coverage for an insured that had allegedly caused contamination problems on the plaintiff's property.  (*Id.* at pp. 560-561.)  This court upheld the trial court's finding that the plaintiff was not entitled to declaratory relief because there was not yet an "actual controversy" between the parties.  (*Id.* at p. 566.)  We explained that "it remains unknown whether [the insurer] will be required to provide coverage to its insured . . . , and whether [the plaintiff] may ultimately be able to make claims against those policy proceeds as a judgment creditor."  (*Ibid.*)  In concluding the plaintiff's declaratory action "was premature" (*ibid.*), we also noted that courts do not "issue advisory opinions about the rights and duties of the parties under particular agreements, if no actual, justiciable controversy has yet developed."  (*Id.* at p. 563.)

Relying on this latter sentence, Kulakowski argues the court's determinations on Verimatrix's unclean hands defense constituted an impermissible advisory opinion.  However, *Otay Land* did not address the issue of a court's authority to issue alternative findings in a declaratory relief case.  Moreover, in this case, unlike *Otay Land*, the court did not find the absence of an "actual justiciable controversy" precluding declaratory relief under section 1060.  Instead, the court found that even if there were grounds for issuing declaratory relief, such relief *as a practical matter* would not resolve the parties' disputes.  (§ 1061.)  Thus, unlike *Otay Land*, the court had before it an actual dispute between the parties and could properly rule on these issues as an *alternative and independent ground* to its finding that relief was *unnecessary*.  The court's ruling on Verimatrix's defenses was not an improper advisory opinion.

15

Finally, any error in the court's ruling on the unclean hands defense was not prejudicial. The section 1061 ground—unchallenged on appeal—supports the judgment denying Kulakowski's declaratory relief request. Under the California Constitution, the court may not reverse a judgment unless the appellant demonstrates the error was prejudicial. (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) " 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.' " (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 72.) Kulakowski has not shown prejudice because even without the court's findings on the affirmative defense, the court's discretionary decision that declaratory relief was not necessary or proper supported the judgment.[3]

## II. *Court's Unclean Hands Ruling*

Kulakowski also challenges the court's factual conclusions that he breached his fiduciary and contractual duties owed to Verimatrix. However, by failing to summarize all of the relevant evidence presented at trial, he has waived this argument. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) Kulakowski argues there "is no reason in this appeal to delve into the details of the instances in which the trial court based this ruling because the parties agreed [in the

---

[3]    We do not reach or intend to offer any opinion on the extent to which the court's alternative findings are binding on either party under res judicata or collateral estoppel doctrines.

2009 Amendment] that Kulakowski was free to pursue any inventive activity without regard to subject matter." In support he cites one paragraph of the 2009 Amendment.

This argument is unavailing. Kulakowski specifically requested that the trial court consider extrinsic evidence on the issue of the meaning of the parties' agreements. The court granted this request, and permitted the parties to call witnesses and submit written documents regarding the proper interpretation of the 2004 Agreement, as modified by the 2009 Amendment. Thus, we cannot evaluate the propriety of the court's determination based solely on a review of one paragraph of the 2009 agreement.

On appeal, Kulakowski does not challenge the court's admission of extrinsic evidence to assist in interpreting the parties' agreements, nor does Kulakowski challenge the sufficiency of the evidence to support the court's factual conclusions. Moreover, Kulakowski does not explain or develop his contentions challenging the court's conclusions, or cite any relevant legal authority supporting his summary assertion that the court's contract interpretation was erroneous. On these grounds, Kulakowski has forfeited any such challenges. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699; see also *108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193, fn 3.)

On the record before us and based on Kulakowski's limited and conclusory contention asserted in his appellate briefs, we reject Kulakowski's challenge to the court's factual and legal findings on the unclean hands defense.

DISPOSITION

Judgment affirmed.  Appellant to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.

18